**Ronald R. HARVEY, and Manuel S. Melo, Plaintiffs,**

v.

**Steven E. SNOW, Esq., and Partridge, Snow & Hahn, Defendants.**

**C.A. No. 01–168L.**

United States District Court, D. Rhode Island.

Sept. 11, 2003.

Robert E. Allen, Jr., Esq., Middleboro, MA, for Plaintiff.

Mark P. Dolan, Esq., Providence, RI, for Defendant.

*DECISION AND ORDER*

LAGUEUX, Senior District Judge.

Plaintiffs filed the present legal malpractice action against defendants alleging negligence and breach of contract. They contend that defendants failed to exercise care, skill and diligence during their representation of plaintiffs in a state court action. Defendants filed a motion for summary judgment, after which plaintiffs filed a motion to amend the complaint in order to add an additional plaintiff.

There are currently two issues before the Court. The first is whether plaintiffs' motion to amend should be granted, and the second is whether defendants' motion for summary judgment should be granted. This Court must decide plaintiff's motion first, because if plaintiffs' motion is denied, then this Court must grant defendants' motion for summary judgment as a matter of law.

After close examination of existing case law, this Court concludes that plaintiffs' motion is untimely and that the proposed amendment to the complaint is futile in any event. Therefore, this Court must deny plaintiffs' motion to amend and consequently grant defendants' motion for summary judgment.

*Background*

Ronald R. Harvey and Manuel S. Melo ("plaintiffs") filed the present action pursuant to this Court's diversity jurisdiction against attorney Steven E. Snow ("Snow") and the law firm of Partridge, Snow & Hahn ("PSH") on April 6, 2001 alleging that defendants failed to exercise reasonable care, skill and diligence in the representation of plaintiffs in a state court action. Plaintiffs also make a breach of contract claim, contending that defendants failed to perform their contractual obligations because they failed to exercise

care, skill and diligence during the prosecution of that case.

Plaintiffs were officers and stockholders of HarMel, Corp. ("HarMel"), a Massachusetts corporation which was formed in the early 1980's. HarMel was initially engaged in developing single family homes but later began to develop condominiums. During 1987, HarMel sought to open a restaurant/banquet facility, although plaintiffs had no prior experience in that realm. The corporation entered into a Lease/Purchase Agreement with Ponta Del Gada Patriots Club, Inc. ("Ponta Del Gada"), a non-profit club in Tiverton, Rhode Island. Ponta Del Gada had opened a restaurant and banquet facility for the general public, and HarMel leased the building with the intention of running the operation. HarMel, however, ran into problems with the Town of Tiverton when it attempted to secure the necessary permits in order to renovate the premises and to serve alcohol.

Consequently, PSH and Snow were retained in 1988 to represent HarMel in obtaining the permits. With the help of PSH and Snow, HarMel received its liquor license in April 1988 when the Rhode Island Superior Court affirmed the decision of the State Liquor Control Administrator which had ordered the Town of Tiverton to issue the license to the corporation. In 1992, PSH and Snow also represented HarMel in petitioning the Rhode Island Supreme Court for a writ of certiorari to require the Zoning Board and Building Inspector of the Town of Tiverton to issue building permits to HarMel.

In November 1988, PSH and Snow filed suit on behalf of Harvey, Melo, HarMel, and the Hot Spot, Inc.[1] in Rhode Island Superior Court, sitting in Newport County, against the Town of Tiverton and its officials seeking declaratory and injunctive relief, mandamus, and compensatory and punitive damages pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1988, R.I. Gen. Laws § 9–30–1 *et seq.* and § 8–2–14. These plaintiffs in the Newport County action claimed that the Town defendants had violated their constitutional rights and had intentionally interfered with their contractual rights and advantageous business relationships. While the Newport County suit was pending, HarMel fell behind in its fee payments to PSH. By 1992, HarMel owed PSH approximately twenty-five thousand dollars. As a result, plaintiffs and defendants agreed that PSH and Snow would undertake no further legal work on plaintiffs' behalf until the outstanding balance was paid in full. For the next several years, plaintiffs repeatedly informed defendants that no funds were available to pay the fees. Defendants eventually informed plaintiffs that they would have to withdraw from the Newport County case, but plaintiffs asked PSH to retain its entry of appearance. Defendants agreed, and ultimately received full payment in October 1997. At that point, plaintiffs met with defendants. The parties executed a new representation and fee agreement, plaintiffs paid a retainer, and PSH resumed activity on the Newport County case.

In June 1998, PSH concluded that it could no longer continue to represent the plaintiffs in the Newport County case due to a conflict of interest with a long-standing PSH client. PSH was seeking permits on behalf of that long-standing client from the Town of Tiverton for the development of a power plant. PSH and the client concluded that negotiations with the Town of Tiverton might be compromised by the firm's representation of HarMel in a suit

1. The Hot Spot, Inc. was a Rhode Island corporation created to operate the restaurant/banquet facility.

against the Town and its officials. PSH believed that the long-standing client would suffer greater harm than plaintiffs if the firm withdrew its representation. As a result, PSH decided to withdraw from the Newport County case. Defendants notified plaintiffs of the firm's decision and refunded the $10,000 retainer which plaintiffs had paid to the firm in 1997.

To further complicate matters, in June 1998, the Town defendants in the underlying civil rights action in Newport County filed motions to dismiss for lack of prosecution pursuant to R.I. R. Civ. P. 41(b)(2). Substitute counsel for those plaintiffs unsuccessfully opposed the motion, and the case was dismissed on September 18, 1998. Plaintiffs' new counsel then pursued an appeal in the Rhode Island Supreme Court. The Supreme Court held that the Superior Court justice did not abuse her discretion by granting the motions to dismiss, because the evidence before the trial justice may have led her to conclude that the plaintiffs' excuses for their inactivity were disingenuous. The evidence before the trial justice indicated that at least one plaintiff possessed the financial means to pursue the case in Superior Court. As a result of the dismissal in Superior Court, and subsequent loss before the Rhode Island Supreme Court, Harvey and Melo filed suit against defendants in this Court charging Snow and PSH with negligence and breach of contract in connection with the Newport County action.

Plaintiffs filed the present action on April 6, 2001. After a lengthy discovery period, defendants filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56(c) on June 10, 2002.[2] After filing their objection to the motion for summary judgment on June 28, 2002, plaintiffs moved to amend the complaint on July 3, 2002 seeking to add HarMel as a plaintiff. This Court held a hearing on the motion for summary judgment on July 8, 2002 and took the matter under advisement pending the parties' filing memoranda in support of and in opposition to the motion to amend. This writer then held a hearing on the motion to amend on October 10, 2002. At the conclusion of the hearing, the Court informed the parties that it would take the matter under advisement and issue one opinion deciding both motions. The parties have briefed the issues and the motions are now in order for decision.

*Discussion*

As previously indicated, there are two motions currently before the Court—plaintiffs' motion to amend and defendants' motion for summary judgment. Although plaintiffs seek to add HarMel as a plaintiff, the complaint remains the same in all other respects. As discussed below, if this Court denies plaintiffs' motion to amend, adding HarMel as a plaintiff, then this Court must grant defendants' motion for summary judgment as a matter of law. Thus, the Court must first consider plaintiffs' motion, and it is to this issue that this writer now turns.

### I.  *Motion to Amend*

■ Federal Rule of Civil Procedure 15(a) permits a litigant to file an amended pleading once as a matter of right before a responsive pleading is filed and thereafter by the parties' consent or "by leave of court." Rule 15(a) stipulates that leave to amend should be freely granted when justice so requires, but the Rule's liberal amendment policy does not mean that leave will always be granted. *Acosta–*

---

**2.** On June 10, 2002, this Court scheduled a bench trial on the present matter for July 8, 2002. On June 27, 2002, however, the Court revised the docket and scheduled a hearing on the summary judgment motion for that day. Since this writer took the pending motions under advisement, no new trial date has been set.

*Mestre v. Hilton Int'l of Puerto Rico,* 156 F.3d 49, 51 (1st Cir.1998). The First Circuit has explained that a district court may deny a motion to amend "so long as the record evinces an arguably adequate basis for the court's decision (e.g., futility, bad faith, undue delay, or a dilatory motive on the movant's part)." *Hatch v. Dep't for Children, Youth and Their Families,* 274 F.3d 12, 19 (1st Cir.2001).

■ Defendants argue that the motion to amend should be denied, because the motion is untimely. This Court agrees. The First Circuit emphasized in *Acosta,* that "undue delay in seeking the amendment may be a sufficient basis for denying leave to amend" when granting the motion to amend will further delay the proceedings. 156 F.3d at 52 (internal quotations omitted). In *Acosta,* the plaintiff and his family were vacationing at the Caribe Hilton Hotel in San Juan, Puerto Rico. *Id.* at 50. While sunbathing at the hotel, Acosta attempted to adjust his chaise lounge, but the back of the chair collapsed and severed a portion of his left ring finger. *Id.* Consequently, Acosta and his family sued the Caribe Hilton's parent company and its insurer in the U.S. District Court in Puerto Rico. *Id.* at 51. Fifteen months after filing the complaint, Acosta requested leave to amend in order to add the chair manufacturer as a defendant. *Id.* The District Court, however, denied the motion, because (1) Acosta had failed to justify why he had waited fifteen months before seeking to add the manufacturer as a defendant and (2) allowing the amendment would create an unreasonable delay. *Id.* The First Circuit affirmed concluding that "the prejudice to [the defendant] resulting from a re-opening of discovery with additional costs, a significant postponement of trial, and a likely major alteration in trial strategy and tactics due to the presence of [an additional defendant]" supported the District Court's decision to deny the motion to amend. *Id.* at 52.

The First Circuit's rationale in *Acosta* is applicable to the case at bar. Plaintiffs filed their original complaint on April 6, 2001, but did not move to amend the complaint until July 3, 2002. Just as the plaintiffs in *Acosta* failed to justify their fifteen month delay between the initial filing of the complaint and their motion to amend, so too plaintiffs in the present case have failed to offer *any* explanation for this comparable delay. In the case at bar, plaintiffs merely assert that "[n]o new issues are raised by the Amended Complaint. Extensive discovery was conducted by the Defendants into the affairs of the corporation ... hence, there can be no surprise or prejudice on the part of the Defendants." (Pls.' Mem. in Support of Motion to Amend at 3.) Nevertheless, despite plaintiffs' assertions to the contrary, it is clear to this Court that defendants would be prejudiced if this Court granted plaintiffs' motion. Defendants would inevitably incur additional costs, because this Court would have to re-open discovery regardless of the extent to which discovery was conducted initially. As defense counsel pointed out at oral argument, during the course of discovery, counsel did not delve into the question of whether HarMel would be entitled to damages, because HarMel was not then a plaintiff. Indeed, by asserting that defendants would not be prejudiced in any way if HarMel came into the case, plaintiffs in effect assert that defendants should have devoted time, effort, and resources during discovery to explore the question of what, if any, damages the corporation suffered. Clearly, defendants were not required to pursue that purely hypothetical and irrelevant question during discovery, since HarMel was not a party. Only the individual plaintiffs' claim for damages was relevant then.

Furthermore, plaintiffs' contention that defendants would not be prejudiced if this Court granted their motion to amend ig-

nores *plaintiffs'* own responsibility to assert the claim in their complaint on a timely basis, or to provide the Court with an adequate reason for not having done so. *Acosta,* 156 F.3d at 52–53. Plaintiffs' bald assertions that defendants will not be prejudiced does not explain why plaintiffs allowed fifteen months to pass between the time they filed the complaint and the time they filed the motion to amend. If the discovery undertaken by the parties was as thorough as plaintiffs contend, then *plaintiffs* should have realized that Har-Mel should be a plaintiff in the complaint long before defendants filed their motion for summary judgment—and, more importantly, long before this Court set a trial date.

As the First Circuit noted in *Acosta,* "Rule 15(a)'s liberal amendment policy seeks to serve justice, but does not excuse a lack of diligence that imposes additional and unwarranted burdens on an opponent and the courts." 156 F.3d at 53. As discussed above, adding HarMel to the complaint now will impose additional burdens on defendants, and will certainly result in additional lengthy delays before the motion can be reheard. This Court was prepared to try this case on July 8, 2002. To permit plaintiffs to amend the complaint at this juncture will, at the very least, lead to additional discovery. Given plaintiffs' unwillingness or inability to provide this writer with *any* reason for the lengthy delay, the Court refuses to permit this case to languish on its docket for an additional unspecified amount of time. At the end of the day, when "considerable time has elapsed between the filing of the complaint and the motion to amend ... [plaintiffs have] the burden of showing some valid reason for [their] neglect and delay." *Grant v. News Group Boston, Inc.,* 55 F.3d 1, 6 (1st Cir.1995)(internal quotations omitted). It is clear to this Court that plaintiffs in the present case have failed to sustain that burden.

An any event, even if the motion had been timely filed, the Court would, nevertheless, deny plaintiffs motion to amend, because the amendment is futile. When a plaintiff has filed for leave to amend after discovery has closed and a motion for summary judgment is pending, "the proposed amendment must not be only theoretically viable but also solidly grounded in the record. In that type of situation, an amendment is properly classified as futile unless the allegations of the proposed amended complaint are supported by substantial evidence." *Hatch v. Dept. for Children, Youth and Their Families,* 274 F.3d 12, 19 (1st Cir.2001)(internal citation omitted). When the amendment would be futile or would not serve any legitimate purpose, the district court need not prolong the matter. *Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 59 (1st Cir.1990). "Futility," as defined by the First Circuit, refers to a proposed amendment which fails to state a claim upon which relief can be granted. *Glassman v. Computervision Corp.,* 90 F.3d 617, 623 (1st Cir.1996). In order to determine whether it would be futile to grant plaintiffs' motion to amend, the Court applies the same standard of legal sufficiency as it applies to a motion to dismiss for failure to state a claim upon which relief could be granted. *Id.*

In the present case, plaintiff's proposed amendment is futile because the statute of limitations has run on HarMel's claim. In Rhode Island, the statute of limitations for legal malpractice actions is three years. R.I. Gen. Laws § 9–1–14.3. Section 9–1–14.3 states that "an action for legal malpractice shall be commenced within three (3) years of the occurrence of the incident which gave rise to the action." Nevertheless, if the malpractice could not have been discovered through the exercise of reasonable diligence at the time it oc-

curred, then Section (2) provides that the statute of limitations will expire three years from the time when the legal malpractice should have been discovered through reasonable diligence. R.I. Gen. Laws. § 9–1–14.3(2). Consequently, this Court must determine when plaintiffs "should, in the exercise of reasonable diligence" have discovered that the alleged legal malpractice had occurred. *Id.*

Plaintiffs contend that their alleged injury did not occur until the Rhode Island Supreme Court affirmed the Superior Court's decision to dismiss the Newport County case. Plaintiffs argue that the alleged legal malpractice could not have been discovered before the Superior Court ruled, but that even after the trial court dismissed the case, the misconduct was still illusory. Plaintiffs posit that if the Supreme Court had ruled in their favor, they would not have suffered any injury. Whether the alleged injury was still illusory as of September 1998, however, is simply irrelevant for purposes of § 9–1–14.3. The unambiguous statutory language provides that the statute of limitations begins to run when the *legal malpractice* should have been discovered—not when a court enters final judgment. R.I. Gen. Laws § 9–1–14.3. Indeed, the Rhode Island Supreme Court itself has noted that entry of final judgment is not necessary in order to trigger the statute of limitations under § 9–1–14.3. *Guay v. Dolan,* 685 A.2d 269, 271 (R.I.1996)(explaining that the statute of limitations under § 9–1–14.3 in that case began to run before the jury returned its verdict.)

It is clear to this Court that the alleged malpractice should have been discovered, with reasonable diligence, no later than September 1998 when the Superior Court granted the motions to dismiss for lack of prosecution in the Newport County case. The Court reaches this conclusion, because Harvey himself admitted during his depo-

sition on January 28, 2002 that he was told by a Rhode Island law firm in September 1998 that the firm did not want to represent plaintiffs due to a possible legal malpractice action against Snow and PSH. (Harvey Dep. at 58.) Harvey testified that the Rhode Island firm did not want to represent plaintiffs because Rhode Island is a "small community" and so the firm did not want to "end up having to sue Partridge, Snow & Hahn. . . ." (*Id.*) Thus, as of September 1998, plaintiffs knew, or should have known, that the alleged malpractice had taken place. This Court, therefore, concludes that the three year statute of limitations began to run no later than September 1998 and that it expired as of September 2001. Consequently, even if plaintiffs' motion to amend had been timely, it must be denied, because HarMel's claim is barred by the statute of limitations and thus adding the corporation as a plaintiff is futile.

## II. *Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for ruling on summary judgment motions:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). The critical inquiry is whether a genuine issue of material fact exists. A genuine issue is one "supported by such evidence that a reasonable jury, drawing favorable inferences, could resolve it in favor of the nonmoving party." *Hershey v. Donaldson, Lufkin & Jenrette Securities Corp.,* 317 F.3d 16, 19 (1st Cir.2003)(internal quotation marks omitted). Furthermore, a material fact is "one

'that might affect the outcome of the suit under the governing law.'" *United States v. One Parcel of Real Prop.*, 960 F.2d 200, 204 (1st Cir.1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

On a motion for summary judgment, the moving party bears the initial burden of showing that there are no genuine issues of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This burden may be met by showing the Court that a lack of evidence exists to support the nonmoving party's case. *Rochester Ford Sales, Inc. v. Ford Motor Co.*, 287 F.3d 32, 38 (1st Cir. 2002). Upon discharging that burden, the nonmoving party must demonstrate that the trier of fact could reasonably find in the nonmoving party's favor with respect to each issue on which that party has the burden of proof at trial. *Id.* In the end, the Court must view all evidence and related inferences in the light most favorable to the nonmoving party. *Id.* "[W]hen the facts support plausible but conflicting inferences on a pivotal issue in the case, the judge may not choose between those inferences at the summary judgment stage." *Coyne v. Taber Partners I*, 53 F.3d 454, 460 (1st Cir.1995). Indeed, as this writer has explained, "[s]ummary judgment is not appropriate merely because the facts offered by the moving party seem most plausible, or because the opponent is unlikely to prevail at trial." *Gannon v. Narragansett Elec. Co.*, 777 F.Supp. 167, 169 (D.R.I. 1991).[3]

■ In light of this Court's decision to deny plaintiffs' motion to amend, this writer must grant defendants' motion for summary judgment as a matter of law. As plaintiffs' counsel conceded during oral argument, plaintiffs lack standing to bring this malpractice suit. It was HarMel, the corporation, that was the client and had the contractual relationship with defendants. The Rhode Island Supreme Court has held that under Massachusetts law, when a plaintiff does not assert that the shareholder's individual contract rights

---

**3.** Although the Court may not grant summary judgment simply because the facts offered by the moving party appear to be the most credible, when plaintiffs fail to provide the Court with a Statement of Disputed Material Facts as required by Local Rule 12.1, the Court accepts as true the facts provided by defendants in their statement of undisputed facts accompanying their motion for summary judgment. *D'Oliviera v. Rare Hospitality Int'l, Inc.*, 150 F.Supp.2d 346, 349 (D.R.I.2001). Local Rule 12.1 provides that "[a]ny party opposing ... a motion [for summary judgment] shall serve and file, together with the opposing memorandum of law required under Rule 12 of these Rules, a concise statement of all material facts as to which he contends there is a genuine issue necessary to be litigated." D.R.I. R. 12.1(a)(2). The First Circuit has warned that "noncompliance with ... a [local] rule, as manifested by a failure to present a statement of disputed facts ... justifies the court's deeming the facts presented in the movant's statement of undisputed facts admitted...." *Ruiz Rivera v. Riley*, 209 F.3d 24, 28 (1st Cir.2000). As the Circuit noted in *Rivera*, federal courts are concerned that, "absent such rules, summary judgment practice could too easily become a 'game of cat-and-mouse, giving rise to the 'specter of district court judges being unfairly sandbagged by unadvertised factual issues.'" *Id.* (quoting *Stepanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922, 931 (1st Cir.1983)). Since the local rules provide a structured framework for the summary judgment process, parties ignore the rules at their own peril. *Id.* at 28.

The difficulty in the present case, however, is that neither party complied with Local Rule 12.1. Just as plaintiffs failed to file a statement of disputed facts, so too have defendants failed to file a statement of undisputed facts. Although the parties' failure to abide by Local Rule 12.1 would ordinarily give this Court pause, the parties oversight in this case is of no consequence. Summary judgment must be granted as a matter of law, because the Court has denied plaintiff's motion to amend.

**384**

were violated or that the shareholder was a third-party beneficiary to the contract, then the cause of action belongs to the corporation. *Halliwell Assoc., Inc. v. C.E. Maguire Services, Inc.,* 586 A.2d 530, 533 (R.I.1991). The Court stated that in the event "an action seeks to redress a wrong done to the corporation, or if the claim arises solely as a consequence of a corporate wrong, the claim is derivational in nature...." *Id.* Thus, when a plaintiff has not been injured "in any capacity other than in common with his fellow stockholders, the cause of action belongs to the corporation, and a stockholder may not seek relief on his own behalf." *Halliwell,* 586 A.2d 530, 533 (R.I.1991)(quoting *Hunter v. Old Ben Coal Co.,* 844 F.2d 428, 432 (7th Cir.1988)). Simply put, plaintiffs did not allege in their complaint that they have suffered any individual injury as a result of the dismissal of the Newport County action. At most, they have been injured as stockholders of HarMel since the § 1983 cause of action belonged solely to HarMel as a corporation. *Smith v. Martin,* 542 F.2d 688, 690 (6th Cir.1976). Thus, plaintiffs have no cause of action for any alleged malpractice against defendants, and defendants' motion for summary judgment must be granted.

*Conclusion*

For the aforementioned reasons, plaintiffs' motion to amend the complaint is denied and defendants' motion for summary judgment is granted.

The Clerk shall enter judgment for defendants, forthwith.

It is so ordered.