**SMARTE CARTE, INC., Plaintiff,**

v.

**Carlos COLON, et al., Defendant.**

**No. Civ. 96–1957 HL.**

United States District Court, D. Puerto Rico.

March 19, 1999.

Jane A. Becker–Whitaker, Troncoso & Becker, San Juan, PR, for Plaintiff.

Pedro Pumarada–Surillo, Fiddler, Gonzalez & Rodriguez, San Juan, PR, for Defendant.

### OPINION AND ORDER

LAFFITTE, Chief Judge.

Before the Court is defendants' motion to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6), and the plaintiff's opposition thereto. **Dkt. Nos. 16 & 18.** Additionally, the Court shall consider plaintiff's motion for injunction and defendants' reply thereto. **Dkt. Nos. 30 & 34.**

### STANDARD OF REVIEW

In order to decide a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the Court accepts as true all factual allegations as pleaded in the Complaint and further draws all reasonable inferences, legal and factual, in favor of the non-moving plaintiff. *Negron–Gaztambide v. Hernandez–Torres,* 35 F.3d 25 (1st Cir.1994). Dismissal is proper only if it is clear that no relief could be granted, under any theory, "under any set of facts that could be proved consistent with the allegations." *Kiely v. Raytheon Company,* 105 F.3d 734 (1st Cir.1997) (citing *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Vartanian v. Monsanto Co.,* 14 F.3d 697, 700 (1st Cir.1994)). The ensuing background section of this opinion which sets forth the facts of this case for purposes of the motion to dismiss has been taken directly from the complaint and the exhibits attached thereto, **Dkt. No. 1.**

### BACKGROUND

Smarte Carte, Inc. ["Smarte Carte"] is a Minnesota corporation with its principal place of business in that state. Smarte Carte entered into a lease agreement with the Puerto Rico Ports Authority ["PRPN"] in June of 1991 for the purpose of providing baggage cart service to passengers in the Customs Area of this jurisdiction's Luis Muñoz Marín Airport ["airport"]. In April of 1993, Smarte Carte entered into an agreement with Mr. Carlos Colón pursuant to which Mr. Colón was to manage and maintain Smarte Carte's equipment at the airport and to collect the coins and cash from the machines and deposit the money in Smarte Carte's bank accounts.

Mr. Colón was to receive a certain percentage of the net income generated by the equipment. The agreement between Mr. Colón and Smarte Carte has a choice of law provision stating that the contract is to be construed according to Minnesota law.[1] Furthermore, the contract between Colón and Smarte Carte has a non-competition clause whereby Mr. Colón is barred from competing in any way with Smarte Carte in the marketplace during the life of the contract and for two years after its termination.[2]

The Complaint further alleges that Mr. Colón's son, Alex Colón, was hired by his father to help perform the contract. Plaintiff alleges that while operating under the April 1993 agreement Mr. Colón entered into negotiations with EZ Roller, a competitor of Smarte Carte, to provide services at the airport in competition with Smarte Carte. The agreement between Colón and Smarte Carte was terminated by Smarte Carte in January of 1995. In 1996, Mr. Colón negotiated a contract with EZ Roller to purchase EZ Roller's equipment in order to operate his own baggage cart service. Mr. Colón financed the equipment purchase, but it was Alex Colón, his son, who signed the final agreement with EZ Roller. Alex Colón, as part of the purchase agreement with EZ Roller, warranted that "none of his present or future affiliates, financiers, ... are prohibited by other contractual relationships from participating with [EZ Roller] in the performance of [the] contract."[3]

In 1995, Smarte Carte entered into a second lease with PRPA for space in the Customs Area to provide its baggage cart services through February, 2000. In 1996, Carlos Colón allegedly negotiated a separate lease of space in the airport's customs area with PRPA on behalf of himself while he was aware of the existing agreement between PRPA and Smarte Carte and within the deadline set forth in the no

competition clause of his previous contract with Smarte Carte.

Smarte Carte, upon learning of the lease agreement between PRPA and Colón, met with PRPA in an attempt to resolve any controversy. Smarte Carte learned that there was a new international terminal to open at the airport and a new customs area would consequently be used. PRPA suggested that there was room for both companies to install equipment and compete directly in the new Customs Area of the Airport, otherwise known as Terminal C. Smarte Carte agreed to this solution, but was refused permission to install its equipment to Terminal C by American Airlines who owns the terminal. American refused Smarte, Carte's installation of equipment because Mr. Colón's EZ Roller equipment had already been installed. Smarte Carte purchased EZ Roller in August of 1996 and thus became a successor in interest to that company's agreement with Alex Colón.

Smarte Carte filed the current lawsuit alleging three counts against Carlos and Alex Colón. First Smarte Carte claims that the Colóns tortiously interfered with it's lease agreement with PRPA. Second, Smarte Carte claim that Carlos Colón breached the covenant not to compete in his contract with Smarte Carte and is suing for damages based upon that breach. Thirdly and finally, Smarte Carte is suing Alex Colón for breach of contract in its capacity as EZ Roller's successor in interest on the basis that he violated one of the warranties of his contract with EZ Roller by allowing his father to finance the deal.

## DISCUSSION

Defendants Carlos and Alex Colón have moved the Court for dismissal pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted. It is their contention that covenants not to compete for a term of more than one year

---

1. Complaint, Exhibit 1 at 9.

2. *Id.* at 8.

3. Complaint at 4.

are null and void *ab initio* in Puerto Rico, and therefore that there is no claim for breach of contract against either of Colón's. Additionally, defendants claim as a matter of law that the lease agreements between Smarte Carte and PRPA are invalid, and therefore there is no claim for tortious interference with contract.

The Court shall first determine whether the covenant not to compete in the contract between Carlos Colón and Smarte Carte is unenforceable given the plaintiffs allegations. Before the Court can determine the validity of the noncompetition provision of the contract it must first turns its attention to which law governs the interpretation of the contract.

The Court has diversity of citizenship jurisdiction over the present cause of action under 28 U.S.C. § 1332. When a federal court is sitting in diversity, it must apply the substantive law of its forum state when rendering a decision. *See Erie R.R. v. Tompkins* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Choice-of-law provisions are part of a forum's substantive law. *Borden v. Paul Revere Life Ins. Co.*, 935 F.2d 370, 375 (1st Cir.1991) (citing *Day & Zimmermann, Inc. v. Challoner*, 423 U.S. 3, 4, 96 S.Ct. 167, 46 L.Ed.2d 3 (1975), *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). Consequently, this Court must apply Puerto Rico's choice-of-law provisions as the law of decision in this case. However, the choice of law analysis does not end so simply. The agreement between Colón and Smarte Carte contains its own choice of law provision designating Minnesota law as the governing law of the contract. It is thus for the Court to apply Puerto Rico law to determine the validity of the parties' contractual choice of law provision.

The leading Puerto Rico case dealing with a contractual choice of law provision in a contract is *Walborg Corp. v. Tribunal Superior*, 104 D.P.R. 184 (1975). *Walborg*, despite having been overturned by a subsequent case on different grounds, sets forth the governing law in Puerto Rico concerning choice of law provisions. *Unisys Puerto Rico, Inc. v. Ramallo Bros. Printing*, 128 D.P.R. 842 (1991); *Triangle Trading Co. v. Robroy Indus., Inc.*, 952 F.Supp. 75, 80 (D.P.R.1997). *Walborg* states that choice of law provisions are generally valid provided the chosen jurisdiction has a substantial connection to the contract unless the provision is contrary to fundamental public policy considerations. *Walborg*, 104 D.P.R. at 192.

In applying the *Walborg* analysis to the case at hand, the Court must first determine whether the contract between Smarte Carte and Carlos Colón has substantial connection to Minnesota according to Puerto Rico law. Defendants contend that it does not. They assert that the only connection between the Smarte Carte—Colón agreement and Minnesota is that Minnesota is the state of Smarte Carte's incorporation.[4] Defendants further assert that this connection alone is not substantial enough to satisfy the first prong of the *Walborg* test.[5]

Indeed, Smarte Carte is incorporated in Minnesota as defendants suggest; however, according to plaintiff's complaint, Minnesota is also the location of Smarte Carte's principal place of business. Furthermore, it is a reasonable inference from the face of the complaint that the commission checks paid to Colón under the contract were issued in Minnesota as plaintiff suggests in its opposition motion.[6] Based on these factors, plaintiff argues, that there is more than sufficient connection between Minnesota and the contract at issue to satisfy *Walborg*.

The Puerto Rico courts have issued no guidance on the matter of what constitutes substantial connection enough to satisfy

---

4. Motion to Dismiss, **Dkt. No. 16,** at 10.

5. *Id.*

6. Pl's Opp'n Mot., **Dkt. No. 18,** at 6.

*Walborg's* first prong, other than the *Walborg* opinion itself. However, the Court is not without recourse on this issue. In elucidating the first prong of *Walborg,* the Puerto Rico Supreme Court cited two common law treatises on conflicts of laws as authority.[7] The Restatement (Second) of Conflicts was published in 1971 and embodies the same principle set forth in the cited treatises and adopted by Puerto Rico; namely that the law of the state chosen by the parties will be applied unless there is no substantial connection between the chosen state and the transaction at issue or unless application of the chosen law would contradict a fundamental policy of the forum state. Restatement (Second) of Conflicts § 287(2)(a), (b) (1971). Therefore, despite the lack of Puerto Rico cases on this issue, there is a wealth of jurisprudence surrounding the issue of what constitutes substantial connection to the forum state for purposes of the analysis adopted in Walborg. Reliance on sources other than the cases of Puerto Rico's highest court is warranted when that court has not spoken on a precise issue of law. *Rodriguez–Suris v. Montesinos,* 123 F.3d 10, 13 (1st Cir.1997).[8]

Generally, although courts consider the place of incorporation of a business for purposes of § 287(2)(a), most courts have held that incorporation alone, without more, is not a substantial enough link to enforce a choice-of-law provision. *See e.g., Curtis 1000, Inc. v. Suess,* 24 F.3d 941, 948 (7th Cir.1994) (place of incorporation insufficient by itself to sustain choice of that state's law). However, other courts, notably the First Circuit, have found that a company's place of incorporation in a given state along with a substantial amount of

business activity in that state is sufficient bond to sustain a contractual choice of that state's law. *Ferrofluidics v. Advanced Vacuum Components,* 968 F.2d 1463, 1467 (1st Cir.1992) (fact that company was incorporated in and did substantial business in Massachusetts was enough of a relationship to satisfy § 287) (citing *Carlock v. Pillsbury Co.,* 719 F.Supp. 791, 807 (D.Minn.1989); *Gray v. American Express Co.,* 743 F.2d 10, 17 (D.C.Cir.1984); *Hale v. Co–Mar Offshore Corp.,* 588 F.Supp. 1212, 1215 (W.D.La.1984); Restatement (Second) of Conflict of Laws § 187 comment f).

■ In the present case where Smarte Carte is domiciled in Minnesota and has its principal headquarters there which oversees its national and international operations, including the contract between Smarte Carte and Colón. The Court finds that there is a substantial relationship between Minnesota and the agreement between the parties to satisfy the first prong of *Walborg.* Consequently, the choice-of-law provision is found to have been effectively made. The question now is whether enforcement of that choice-of-law provision will contradict a fundamental policy of Puerto Rico according to the second prong of *Walborg.*

Enforcement of the choice of law provision would mean that Minnesota law would govern the contract rather than Puerto Rico law. On its face, this does not seem to contravene any public policy of Puerto Rico, but the issue is more complex than appears at first blush. At issue is the noncompetition clause. Assuming that Minnesota law would allow for the enforcement

7. "Leflar, *American Conflicts Law,* ed. Rev. 1968, secs. 145–148; Griswold, Cheatham, Reese & Rosenberg, *Conflict of Laws,* 5[th] ed.1964, pág. 543, *et seq.*"

8. As noted above, the Puerto Rico Supreme Court relied on two common law treatises in formulating the first prong of the *Walborg* test. The Court therefore finds it appropriate to rely on common law principles on this issue and is relatively confident of the course

. that the Puerto Rico courts would take on this matter. *See, Acosta–Mestre v. Hilton Int'l of Puerto Rico, Inc.,* 156 F.3d 49, 54 (1st Cir. 1998) (First Circuit found that Puerto Rico courts had generally relied on common law tort principles and applied that jurisprudence in the absence of caselaw authority). *See also, Matos–Rivera v. Flav–O–Rich,* 876 F.Supp. 373 (D.P.R.1995).

of the clause as plaintiff contends, the Court is compelled under *Walborg's* second prong to examine whether enforcement of the non-competition clause is in violation of a fundamental public policy of Puerto Rico.

Indeed, the Puerto Rico Supreme Court case *Arthur Young & Co. v. Vega*[9] specifically held that non-competition clauses that do not meet the criteria set forth in that case, not only "violate contractual good faith but also public policy, by excessively and unjustifiably restricting the employee's freedom of contract and the general public's freedom of choice." *Id.*, 137 D.P.R. ——, 94 J.T.S. 75, P.R.Offic.Trans. At 17–18. The court in *Arthur Young* carefully traced the history of non-competition clauses from its sources in both the civil and common law traditions of contract law. *Id.*, P.R.Offic.Trans. At 6–15. The court was emphatic and explicit in outlining five requirements to create a valid non-competition clause in Puerto Rico, and more importantly, was explicit about the public policy reasons that underlay those requirements. *Id.*, P.R.Offic.Trans. at 15–18.

Given the explicit language in *Arthur Young* that non-competition agreements that do not comport with the court's requirements are against public policy, the Court is compelled to examine the terms of the non-competition clause as alleged by defendant and determine whether those terms, given all inferences, comply with the requirements of *Arthur Young*.[10] In other words, the Puerto Rico court's holding that certain non-competition clauses violate public policy causes the Court to examine whether the clause at issue is valid under Puerto Rico law before the Court can decide whether Puerto Rico law governs the contract.

In examining the clause at issue in light of the *Arthur Young* analysis, it quickly becomes clear that the clause, as alleged, does not conform to the requirements. The elements of a valid non-competition agreement in Puerto Rico as set forth in *Arthur Young* are: (1.) The employer must have a legitimate interest in the agreement; (2.)the scope of the prohibition must fit the employer's interest but not exceed twelve months; (3.) The employer shall offer a consideration in exchange for the employee signing the non-competition covenant other than mere job tenure; (4.) Non-competition agreements must be valid contracts; (5.) Non-competition covenants must be in writing. *Arthur Young*, 137 D.P.R. 40, 94 J.T.S. 75, Offic.Trans. at 16–17 (1994).

The non-competition clause in the agreement between plaintiff and defendant falls requirements two and three, even when all inferences are drawn in favor of the plaintiff as required by Fed.R.Civ.P. 12(b). The clause fads step two because it exceeds the explicit time limitation of twelve months imposed under that step. *Arthur Young*, P.R.Offic.Trans. at 16. The court explains that this limitation is in place because "any additional term [would be] excessive and unnecessary to adequately protect [an] employer." *Id.* Earlier in the opinion, the court explained that in civil law jurisdictions, such restrictions are traditionally emplaced to protect employees against an undue restriction on their right to work and operate by voiding the non-competition agreement. *Id.*, P.R.Off-

---

9. 94 U.S. 75, 137 D.P.R. 40 (1994), Offic.Trans.

10. **Plaintiff** contends that the *Arthur Young* court's reliance on common law principles in its decision shows that non-competition clauses are not matters unique to Puerto Rico policy like the issues in the *Walborg* case. This argument misses the mark. Even if it is true that similar public policy considerations underlie the Puerto Rico and Minnesota laws of non-competition agreements, an assertion undermined by Puerto Rico's explicit reliance on several civil law sources, *Arthur Young* makes clear that non-competition clauses not in compliance with its terms are void as a matter of public policy. It is not for this Court to determine which policies of the forum jurisdiction are unique or more valid than others.

ic.Trans. at 15. The protection of employees afforded by the time limitation is thus clearly and explicitly a matter of public policy according to the Puerto Rico Supreme Court in *Arthur Young*. Because applying Minnesota law would contravene explicit public policy, the contractual choice-of law provision must fall under the second prong of the *Walborg* test. This Court is therefore compelled to construe this contract under Puerto Rico law.

■ As shown above, *Arthur Young* invalidates all non-competition clauses in excess of twelve months. *Arthur Young*, Offic.Trans. at 16. This invalidation is strictly enforced, and courts are instructed not to apply the common law rule of reasonableness in order to modify the provision. *Id.*, at 18. Any non-competition covenants that do not conform to the standards of *Arthur Young* "will be declared void" *ab initio. Id.* at 18.

It is precisely the non-competition clause of the contract which underlies plaintiff's claims for breach of contract against Carlos and Alex Colón. Plaintiff alleges that Carlos Colón's negotiations with EZ Roller directly breached this provision of the contract. Even construing all inferences in plaintiff's favor, as a matter of law, Carlos Colón could not have breached a provision of the contract that was void *ab initio.* Count Two of plaintiff's complaint must therefore be **dismissed** under Fed.R.Civ.P. 12(b)(6).

As for Count Three, plaintiff sues as successor in interest to EZ Roller and claims that Alex Colón breached his warranties to EZ Roller. The claim is that Alex Colón warranted that none of his "present or future affiliates, financiers, guarantors, officers, employees, advisors, or consultants [were] prohibited by other contractual relationships from participating with [Colón] in the performance of the contract." Smarte Carte alleges that Carlos Colón, as Alex's financier, was prohibited by the non-competition clause from participating in performance of the EZ Roller contract causing·Alex to breach his war-

ranty. Again construing all inferences in plaintiff's favor, as a matter of law, Carlos Colón was not prohibited from participating in the EZ Roller contract in light of the invalid non-competition clause. Therefore, Alex Colón could not have breached his warranties to EZ Roller as alleged by plaintiff. Count Three of the complaint against Alex Colón must also, therefore, be dismissed.

■ Finally, plaintiffs do not meet the test for preliminary injunctive relief Plaintiff must show: (i) the plaintiff's likelihood of success on the merits; (ii) whether the plaintiff risks suffering irreparable harm if the injunction is not granted; (iii) whether such injury outweighs the harm that injunctive relief would cause for the defendant; and (iv) the public interest would not be adversely affected by granting or denying an injunction. *American Bd. of Psychiatry & Neurology, Inc. v. Johnson–Powell*, 129 F.3d 1, 2–3 (1st Cir.1997) (citing *Equine Technologies, Inc. v. Equitechnology, Inc.*, 68 F.3d 542, 544 (1st Cir. 1995)). Plaintiff is seeking an injunction permitting it to install baggage cart servicing in a new terminal of the airport. Defendants are operators of another baggage service and do not have the authority to permit or deny plaintiff's installation. Thus, even assuming plaintiff will succeed on it claim for tortious interference against defendants, they may not be able to achieve the remedy sought by their injunction request. Furthermore, there is no reason why plaintiff's complaint cannot be satisfied by a money judgment. Any business losses suffered by plaintiff as a result of the alleged interference will not be difficult to calculate. The Court need go no further with this analysis, plaintiff's motion for injunction is **denied.**

**WHEREFORE,** Counts Two and Three of plaintiff's complaint are **dismissed with prejudice.** Plaintiff's motion for injunction pending the outcome of litigation is **denied**. Count One of the complaint remains pending against the Colóns for tor-

tious interference with Smarte Carte's lease agreement with PRPA. Partial judgment shall issue accordingly.

It is So Ordered.