LUCAS–INSERTCO PHARMACEUTI-
CAL PRINTING COMPANY OF MA-
RYLAND LLC, et al., Plaintiffs

v.

Ronald SALZANO, Defendant

No. 00–1456 JP.

United States District Court,
D. Puerto Rico.

Nov. 8, 2000.

Heriberto J. Burgos–Pérez, Fiddler, González & Rodríguez, San Juan, PR, for Plaintiff.

Antonio E. Marichal Aponte, San Juan, PR, Modesto L. Rodríguez–Suárez, Hato Rey, PR, for Defendant.

## *OPINION AND ORDER*

PIERAS, Senior District Judge.

## I. INTRODUCTION

Before the Court are Plaintiffs' Pre–Hearing Memorandum (docket No. 15); Defendant's Memorandum of Law in Opposition to the Issuance of Preliminary Injunction (docket No. 16); Defendant's Brief in Opposition to the Issuance of a Preliminary Injunction (docket No. 20); Plaintiffs' Post–Hearing Memorandum (docket No. 21); Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction (docket No. 22); and Plaintiffs' Opposition thereto (docket No. 23). On May 3, 2000, the parties appeared before the Court for an evidentiary hearing on Plaintiffs' request for a preliminary injunction.[1]

Plaintiffs Lucas–Insertco Pharmaceutical Printing Company of Maryland LLC ("Lucas–Insertco MD") and Lucas–Insertco Pharmaceutical Printing Company of Puerto Rico ("Lucas–Insertco PR") seek to extend for the duration of these proceedings the temporary restraining order issued by Judge Alexander Harvey II of the United States District Court for the District of Maryland, to enforce the non-competition and non-solicitation covenants contained in an employment agreement ("the

Agreement") between the parties to this action. Defendant Ronald Salzano ("Salzano") argues that the case is subject to dismissal for lack of subject matter jurisdiction. In the alternative, he opposes the issuance of a preliminary injunction on the grounds that the covenant not to compete is unenforceable as contrary to the public policy of Puerto Rico. The Court first addresses the issue of subject matter jurisdiction before turning to the propriety of the issuance of a preliminary injunction.

## II. DISCUSSION

### A. Subject Matter Jurisdiction

Salzano's first line of defense relates to the competence of the Court to assert jurisdiction over this case. He argues that the Court is without subject matter jurisdiction because the parties are not truly diverse. In particular, Salzano alleges that Lucas–Insertco PR's principal place of business is Puerto Rico, not Maryland, thus destroying diversity. *See Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806) (requiring complete diversity among the parties).

The Court notes at the outset that Judge Harvey already addressed the issue of subject matter jurisdiction in considering a Motion to Dismiss filed by Salzano. At that juncture, the Maryland District Court determined that the applicable test was the "nerve center" test, and that based on the affidavits filed by the parties, the nerve center of Lucas–Insertco PR was Maryland. In so holding, the Court noted that Lucas–Insertco PR's executive officers, Board of Directors, financial affairs, banks, and accountants were all centered in Maryland. *See Peterson v. Cooley,* 142 F.3d 181 (4th Cir.1998); *Topp v. CompAir, Inc.,* 814 F.2d 830 (1st Cir.1987).

Salzano asks this Court to reconsider Judge Harvey's determination based on new evidence that has arisen through the

1. The Court hereby **DENIES** Plaintiffs' Motion to Advance and Consolidate Trial on the Merits with Preliminary Injunction Hearing (docket No. 5).

taking of depositions subsequent to the issuance of that Order. Upon review of these depositions, however, the Court finds that the facts before Judge Harvey at the time he considered the Motion to Dismiss are, at bottom, largely unchanged. As such, the Court finds no reason to reach a conclusion different from that reached by Judge Harvey with respect to Lucas–Insertco PR's principal place of business. Accordingly, the Court hereby **DENIES** Salzano's motion to dismiss for lack of subject matter jurisdiction.

## B. Preliminary Injunction

■ For injunctive relief to issue, the party seeking the preliminary injunction must establish that: (1) it is substantially likely to succeed on the merits of the claim; (2) absent the injunction there is a significant risk of irreparable harm; (3) the balance of hardships weighs in its favor; and (4) the injunction will not harm the public interest. *See Lanier Professional Services, Inc. v. Ricci,* 192 F.3d 1 (1st Cir.1999). Based on the evidence presented, the Court concludes that Plaintiffs have sustained their burden of establishing the requisite elements for the issuance of a preliminary injunction.

### 1. Likelihood of Success on the Merits

The Court finds that Plaintiffs are substantially likely to succeed on the merits of their claim. Salzano does not contest that he entered into an employment agreement with Plaintiffs containing a covenant not to compete, and that he breached that clause by taking up employment with a competitor of Plaintiffs. He contends, however, that under Puerto Rico law, the non-competition covenant is overly broad and therefore unenforceable as offensive to the public policy of the forum. *See Smarte Carte, Inc. v. Colón,* 47 F.Supp.2d 183

(D.Puerto Rico 1999); *Arthur Young & Co. v. Vega III,* 136 D.P.R. 157, 1994 WL 909262 (P.R.1994).[2]

■ Under Puerto Rico law, a covenant not to compete is reasonable if: (1) the employer has a legitimate interest in the agreement; (2) the scope of the prohibition corresponds with the employer's interest but does not exceed twelve months; (3) the employer offers a consideration other than mere job tenure in exchange for the employee signing the non-competition covenant; (4) the contract is valid; and (5) the non-competition covenant is in writing. *Arthur Young,* 136 D.P.R. at 175–76. Although some jurisdictions permit a court to sever the offending portions of an overly-broad covenant not to compete in order to save it from wholesale invalidation, Puerto Rico has specifically rejected that approach. *Id.* at 177 ("[R]ather than modify the will of the parties to adjust it to reasonable standards, any covenant not to compete that fails to comply with the foregoing conditions will be declared null.") (Transl.ours). Thus, should such a covenant fail to conform to the standards of *Arthur Young,* the Court must declare it void *ab initio. See Smarte Carte,* 47 F.Supp.2d at 189.

■ At the hearing Plaintiffs presented evidence of their legitimate interest in the covenant not to compete. Salzano's job, as President, principally involved sales and marketing. He was given access to all of Plaintiffs' customers and his work efforts centered on efforts to expand business with these existing customers, as well as developing relationships with new customers. Plaintiffs financed Salzano's marketing efforts with a generous salary and substantial fringe benefits, and he himself described his job as a "professional eater," meaning that his principal function was to

2. Although the Agreement contains a choice-of-law clause indicating that Maryland law is to apply to it, the parties both recognize that pursuant to *Smarte Carte, Inc. v. Colón,* 47 F.Supp.2d 183 (D.Puerto Rico 1999) and *Arthur Young & Co. v. Vega III,* 136 D.P.R. 157, 1994 WL 909262 (P.R.1994), the validity of the covenant not to compete must be assessed under Puerto Rico law.

wine and dine customers. His marketing efforts, which involved extensive travel to the continental United States, was financed by Plaintiffs. If Salzano left his employment, Plaintiffs would be in jeopardy of losing the customer relationships they had paid Salzano to develop. The non-competition period was intended to provide Salzano's replacement with time to develop relationships with Plaintiffs' existing customers, so as to level the playing field. Plaintiffs' business could be seriously affected by direct competition with Salzano in the same industry shortly after his departure. In light of this evidence, the Court finds that Plaintiffs had a legitimate interest in the covenant not to compete, thus satisfying the first prong of *Arthur Young.*

With respect to the second prong of *Arthur Young*, Salzano vigorously maintains that the covenant not to compete is overly broad in terms of its geographic scope and the business to which it applies. Plaintiffs, on the other hand, argue that the covenant is limited to those geographical areas of critical significance to its business, and to the business in which Plaintiffs are engaged. The covenant at issue provides, in pertinent part, as follows:

5.1 *Restriction on Competition After Termination*

In the event of a termination of SALZANO'S employment under Section 4 of this AGREEMENT, SALZANO agrees that for a period of one (1) year following any notice of resignation ... SALZANO may not (i) directly or indirectly, on behalf of himself or anyone else, solicit printing business from or provide printing services to any person or entity that was a customer of the COMPANIES during the employment of SALZANO; or *(ii) directly or indirectly, engage in, own, manage, operate or provide consulting services to, or be employed by any business that provides printing services in Maryland, Wash-ington, D.C., Northern Virginia, Puerto Rico or New Jersey.*

(Emphasis added).

The following test governs the reasonableness of the scope of a covenant not to compete: "With respect to the scope of the prohibition [on competition], the contract should specify the geographical limitations *or* the affected clients. As to the geographical limitation to which the restriction applies, it should be limited to that strictly necessary to avoid real competition between the employer and the employee." *Arthur Young*, 136 D.P.R. at 175–76 (emphasis added) (transl.ours). Where, on the other hand, the contract specifies the affected clients, "it should refer only to those the employee personally serviced during a reasonable period of time before resigning, and that at the time of the resignation, or for a period immediately before the resignation, were still clients of the employer." *Id.* at 176 (transl.ours). Salzano erroneously reads this test to mean that the geographical limitation must be circumscribed to those locations where the employee personally serviced clients of the employer. The test, however, is disjunctive, setting forth the governing norms to cover two variations on the nature of the restriction in a covenant to compete. Salzano's reading of *Arthur Young*, which collapses the two tests into one, is clearly unsupported by the text.

The Court finds that the scope of the prohibition is reasonable. It is limited temporally to a period of twelve months, and is consistent with the employer's legitimate interest in protecting its customer base while introducing a new sales and marketing person to the customers that had formerly been dealing with Salzano. The geographical limitation restricts employment with companies providing printing services in Maryland, Northern Virginia, the District of Columbia, New Jersey, and Puerto Rico, areas where Plaintiffs were located; where it had commercial, pharmaceutical, or pharmaceutical printing customers; or where it was establishing

operations. Nonetheless, Salzano maintains that the covenant should be invalidated because it restricts employment in geographical areas where Plaintiffs are not engaged in pharmaceutical printing services. Although Salzano's sales and marketing activities focused principally on Plaintiffs' pharmaceutical printing customers (located in Maryland and New Jersey) and tangibly affected those locations where Plaintiffs had established or were establishing pharmaceutical printing operations (Maryland and Puerto Rico), Plaintiffs' evidence showed that Salzano came into contact with all of Plaintiffs' commercial customers, not just its pharmaceutical printing customers, by virtue of his participation in the company's executive committee and the fact that he was expected to cross-sell the company's products. Because Salzano's relationships extended to all of Plaintiffs' customers, the restriction's extension to Northern Virginia and the District of Columbia, where Plaintiffs testified they have commercial printing customers, was necessary to protect Plaintiffs from competition with Salzano. *Cf. Arthur Young,* 136 D.P.R. at 181 (finding reasonable the restriction in covenant not to compete that barred employee from providing any of those services provided by the employer, not just those actually performed by the employee during his tenure).[3]

Third, the Court finds that Plaintiffs offered consideration in exchange for the covenant not to compete. Plaintiffs presented testimony that in consideration for the non-competition covenant, Plaintiffs offered Salzano six months' severance at full salary. Fourth, the parties do not dispute that the Employment Agreement is the product of offer, acceptance, and consideration, and thus a valid contract. And finally, contract is in writing. The Court therefore concludes that Plaintiffs have shown a likelihood of success on the merits because the evidence presented suggests that the covenant not to compete is valid under Puerto Rico law. *Cf. Brunswick Corp. v. Jones,* 784 F.2d 271 (7th Cir.1986) (finding likelihood of prevailing on merits of claim to enforce covenant not to compete); *Curtis 1000, Inc. v. Youngblade,* 878 F.Supp. 1224 (N.D.Iowa 1995) (same).

**2. Risk of Irreparable Harm**

■ The Court finds that Plaintiffs risk suffering irreparable harm if Salzano is not preliminarily enjoined from competing with them during the period specified in the Employment Agreement. Salzano spearheaded Plaintiffs' sales and marketing efforts since 1997, and had extensive and direct contact with Plaintiffs' existing and prospective customers. Plaintiffs offered testimony to the effect that they needed time to establish Salzano's replacement in the area of sales and marketing, in order to solidify the relationships with their existing customers and to court prospective customers. More specifically, Plaintiffs presented testimony that it was engaged in a critical bidding process to regain a lost client, Bristol Myers, which could be thwarted if Salzano were permitted to continue in his employment with a competitor of Plaintiffs, The Lehigh Press of Puerto Rico. The Court thus concludes there is a cognizable threat of irreparable harm. *See Ross–Simons of Warwick, Inc. v. Baccarat, Inc.,* 102 F.3d 12, 18–19 (1st Cir.1996). In the alternative, irreparable injury results by virtue of Salzano's admission that he not only breached the covenant not to compete, but that he has been in contact with Plaintiffs' customers subsequent to his resignation. *See JAK Prod., Inc. v. Wiza,* 986 F.2d 1080, 1084 (7th Cir.1993) ("Whenever an employee uses his experience gained from an employer in violation of a reasonable covenant not to compete, irreparable injury occurs and injunctive relief is appropriate."); *Overholt Crop Ins. Serv. Co. v. Travis,* 941 F.2d 1361, 1372 (8th Cir.1991) (holding that ir-

---

**3.** *Arthur Young* found the covenant at issue to be excessively broad, however, in that it restricted such employment for a period of two years. *See id.* at 182.

**32**

reparable harm can be inferred from a trial court's finding of breach of a restrictive covenant by defendant).

### 3. Balance of Hardships

■ Plaintiffs' injury, if not awarded the preliminary injunction, outweighs the potential harm to Salzano. First, given Plaintiffs' strong likelihood of success, the balance of hardships weighs heavily in their favor. *See Equal Employment Opportunity Comm. v. Astra U.S.A., Inc.,* 94 F.3d 738, 743 (1st Cir.1996). Second, while Salzano would be harmed by having to delay the start of his new employment, Plaintiffs have established that they face a tangible risk of losing customers significant to their business and/or risk failing to regain an important customer that it had expended considerable resources to court. Plaintiffs' injuries therefore could project well into the future, whereas Salzano's are of a more limited scope.

### 4. Public Interest

■ Although covenants not to compete are generally disfavored, they are consistent with the public interest when properly limited in scope. Importantly, the public interest in the integrity of contractual relations is furthered by the issuance of the preliminary injunction in a case such as this, because the public has an interest in seeing that contracts between consenting parties are honored. *See Boston Celtics Ltd. Partnership v. Shaw,* 908 F.2d 1041, 1049 (1st Cir.1990). Accordingly, issuance of the preliminary injunction will not harm the public interest.

### III. CONCLUSION

For the foregoing reasons, the Court hereby **DENIES** Defendant's motion to dismiss for lack of subject matter jurisdiction, and **GRANTS** Plaintiffs' motion for the issuance of a preliminary injunction. The terms of the Temporary Restraining Order **SHALL** therefore remain in effect as a preliminary injunction until **October** 3, 2000, the date on which the covenant not to compete expires.

**IT IS SO ORDERED.**