IDALIA RUBÍN VDA. DE VILA Y RAFAEL VILA RUBÍN, demandantes y recurrentes, *v.* CARMEN GUERRA MONDRAGÓN, GABRIEL GUERRA MONDRAGÓN Y AMERICAN MOTORIST INSURANCE COMPANY, demandados y recurridos. FRANCISCO VILA POLANCO, MONSERRATE VILA POLANCO, HERMINIA VILA POLANCO E IRMA CUEVAS POLANCO, demandantes y recurrentes, *v.* AMERICAN MOTORIST INSURANCE COMPANY, CARMEN M. GUERRA MONDRAGÓN Y GABRIEL GUERRA MONDRAGÓN, demandados y recurridos.

*Número:* R-77-142    *Resuelto:* 30 de mayo de 1978

*Jaime Rodríguez Rivera, Uriel G. Candelas, Carlos Rodríguez Sierra, José G. Rolón Rivera* y *Mario Rivera Toll,* abogados de los recurrentes; *Rivera Mercado & Rivera Cordero,* abogados de los recurridos.

EL JUEZ ASOCIADO SEÑOR IRIZARRY YUNQUÉ emitió la opinión del Tribunal.

### EN RECONSIDERACIÓN

El 17 de diciembre de 1973, a eso de las 7:45 de la mañana, doña Carmen Guerra Mondragón de García conducía un automóvil por la avenida Magdalena, sector del Condado

en Santurce. Iba a llevar sus niños a la escuela, que quedaba en ese mismo sector. Después de pasar la intersección con la calle Caribe su carro golpeó a don Reymundo Vila Polanco, hombre de 65 años de edad, en los momentos en que éste cruzaba la avenida ocasionándole golpes de los que fue atendido en el Hospital Presbiteriano, donde quedó hospitalizado hasta el 30 de diciembre siguiente en que fue dado de alta. Fue trasladado a su casa en Bayamón, donde falleció el 5 de enero de 1974, es decir, diez y nueve días después del accidente. La viuda y el hijo de don Reymundo instaron demanda contra doña Carmen, contra el dueño y contra la compañía aseguradora del automóvil que ella conducía. Reclamaron por los daños y perjuicios que alegaron sufrió don Reymundo y por los que a su vez ellos sufrieron. En demanda separada reclamaron por daños tres hermanas y un hermano de don Reymundo. Ambas demandas fueron consolidadas y los casos se ventilaron ante el tribunal a quo como un solo pleito. Todos los demandantes han recurrido ante nos para que revisemos la sentencia recaída, que declaró sin lugar sus reclamaciones por entender la Sala sentenciadora que doña Carmen no incurrió en negligencia alguna.

Mediante sentencia de 6 de marzo de 1978 confirmamos la dictada por el tribunal de instancia.(¹) Solicitada reconsideración, y reexaminada la exposición narrativa de la prueba, resolvimos el 6 de abril de 1978 requerir de la parte recurrida mostrar causa por la cual no debamos reconsiderar. La parte recurrida ha comparecido para oponerse a la reconsideración. Hemos analizado nuevamente la prueba y concluimos que erró en su apreciación el tribunal de instancia. Ello nos obliga a reconsiderar.

Para la fecha del accidente Don Reymundo contaba 65 años de edad y era un hombre muy enfermo. Desde el 1961

---

(¹) Disintieron los Jueces Asociados Señores Díaz Cruz e Irizarry Yunqué. No intervinieron el Juez Presidente Señor Trías Monge y el Juez Asociado Señor Rigau.

en adelante fue hospitalizado en varias ocasiones debido a fallos cardíacos como consecuencia de arteriosclerosis del corazón. Para 1970 su enfermedad era crítica, razón por la cual tenía que visitar al cardiólogo, Dr. Vizcarrondo, en el Condado, casi todas las semanas. Aunque no estaba incapacitado para caminar, su condición requería que lo hiciera en compañía de alguien. No obstante, el 17 de diciembre de 1973 don Reymundo viajó solo desde Bayamón a San Juan, utilizando transportación pública, para ir a ver a su médico. El carro lo dejó en la avenida Ponce de León y, como hemos señalado, en el momento de ocurrir el accidente cruzaba la avenida Magdalena. El Dr. Vizcarrondo lo había visto por última vez exactamente una semana antes, el 10 de diciembre.

El tribunal de instancia concluyó, entre sus determinaciones de hechos, que el accidente ocurrió por la sola culpa de don Reymundo, al lanzarse a cruzar la avenida súbitamente, yendo en dirección de norte a sur, en un sitio no señalado como cruce de peatones, y no obstante que la visibilidad hacia el oeste, que es la dirección de donde fluía el tránsito, estaba limitada por una semicurva. El vehículo conducido por la Sra. Guerra Mondragón iba por el carril de la izquierda a 25 millas por hora, que era el límite máximo permitido para esa zona en aquella fecha.

La exposición narrativa de la prueba(²) revela como único apoyo a la conclusión de que don Reymundo cruzaba de norte a sur, una suposición del policía que investigó el accidente. Y la única versión que aparece en la exposición narrativa de que don Reymundo salió a cruzar súbitamente la dio el abogado de la parte recurrida al formular una pregunta argumentativa a la Sra. Carmen Guerra Mondragón, demandada y ahora recurrida. Inexplicablemente, el tribunal de

---

(²) Cabe señalar que esta exposición narrativa de la prueba está suscrita como correcta, y así se hace constar expresamente, por el abogado de los demandados recurridos, Lcdo. José A. Rivera Mercado. Es una de las exposiciones narrativas más completa, detallada y mejor preparada que hemos tenido ocasión de examinar.

instancia ignoró el testimonio de esta testigo, única prueba testifical aportada en este caso de una persona que presenció el accidente, y que resulta ser precisamente quien guiaba el automóvil.

La conclusión de que don Reymundo se lanzó de súbito a cruzar la avenida es difícil de aceptar. Contaba 65 años de edad. A esa edad no se puede presumir la imprudencia y el despego a la vida. La madurez de los años es casi sinónimo de circunspección. Afectado seriamente por una condición de arteriosclerosis del corazón, se aferraba a la esperanza de continuar viviendo y por ello semanalmente iba a visitar a su médico. Ni su edad ni su estado de salud permitían comparar su conducta a los de la persona joven y ágil que vive de prisa y no teme porfiar el derecho de paso a los automóviles.

La sugerida conclusión(³) sobre el salto súbito al peligro no encuentra apoyo en la prueba. La Sra. Guerra Mondragón no vio a don Reymundo cuando comenzó a cruzar. Dijo que estaba impedida de ello porque la semicurva le obstruía la visibilidad por 30 ó 40 pies, y al salir de la semicurva quedó temporeramente cegada por el sol. Cuando se percató de la presencia de don Reymundo ya su carro estaba a sólo 10 ó 15 pies de distancia de él.

La dirección en que caminaba don Reymundo es también importante. La Sra. Guerra Mondragón declaró clara y específicamente que él cruzaba de sur a norte. (⁴) La prueba mé-

---

(³) Relata la exposición narrativa, pág. 7, que mientras declaraba la Sra. Guerra Mondragón: "a preguntas del Lcdo. Rivera Mercado sobre si oyó decir al señor Policía que cuando él llegó ella le dijo 'que la luz del Sol [*sic*] le había nublado un poco y que el señor Vilá le había salido de súbito y ella lo había impactado', contestó que eso era correcto." Esa es la única ocasión en que aparece la expresión de que don Reymundo salió "de súbito." Es curioso que ni siquiera aparece en el relato del testimonio del policía.

(⁴) Dice la exposición narrativa, pág. 3, refiriéndose al testimonio de dicha señora: "El señor Reymundo Vilá cruzaba hacia el Norte. Que con relación a la Avenida Magdalena el Norte queda hacia el Mar, a mano

dica estableció de manera incontrovertida que los dolores que sentía don Reymundo eran en el lado izquierdo, por haber sufrido una fractura de la pelvis, en su lado izquierdo. Esto corrobora que cruzaba de sur a norte cuando recibió el impacto del automóvil. La presunción del policía investigador de que don Reymundo cruzaba de norte a sur no puede apoyarse en que don Reymundo pudiera haberle dado tal versión. El propio policía declaró que al personarse al lugar del accidente y conducirlo al hospital, "no le hizo preguntas mientras lo conducía en la patrulla"; que trató de hablar con él y "casi no se le podía entender lo que él decía"; que "asociaba que estaba cruzando la calle, que había salido para un dispensario y se quejaba"; que "quería expresarse en muchas formas y decía muchas cosas a la misma vez que hablaba en voz baja"; "Que el señor Vilá Polanco no le manifestó cómo había ocurrido el accidente"; "Manifestó que no tuvo ocasión de preguntarle al señor Polanco cómo ocurrió el accidente."

Sin duda fue una imprudencia de don Reymundo tratar de cruzar la avenida en un sitio no indicado como cruce de peatones. Pero ello no fue única causa próxima del accidente. La conductora del automóvil fue imprecisa en cuanto a la velocidad a que iba. Dijo—E.N. pág. 5—que "al momento del

izquierda. Que el señor Vilá cruzaba de derecha a izquierda. Que ella iba ocupando el carril de la izquierda. Que la calle tiene dos carriles."

Más adelante, en la pág. 5, sigue resumiéndose el testimonio de la Sra. Guerra Mondragón, así: "Tuvo oportunidad de hablar con el Policía, a quien ella le explicó lo que había pasado, lo que había ocurrido. Le dijo que yendo por el carril izquierdo a las ocho menos cuarto o menos diez de la mañana, a llevar a los niños a la escuela, al tomar la curvatura que hay antes de entrar a la intersección de la calle Caribe se había encontrado con esta persona (señor Vilá) y *que en ese momento la luz del sol era fuerte, y probablemente nubló un poco su vista,* y dio un golpe con el guardalodo izquierdo a la persona que estaba cruzando. Que era un día claro. Que debido a la curva que hay no se ve perfectamente el carril izquierdo más allá de la calle Caribe y que la semicurva le obstruía la vista de 30 a 40 pies hacia adelante. Que el carril derecho lo podía ver perfectamente. Que antes del impacto vio al Sr. Reymundo Vilá como de 10 a 15 pies de distancia y que éste *iba hacia el Norte cruzando de la placita hacia el mar y que el Norte es el mar, o sea, que cruzaba de sur a norte."* (Énfasis nuestro.)

impacto iba como a 25 millas por hora"; y que—E.N. pág. 7 —"no sabe cuál es la velocidad máxima permisible en esa carretera, pero que ella iba como a 25 m.p.h. y que generalmente corre a esa velocidad por esa calle y sobre todo en esas circunstancias."

El hecho de que por ley se señale un máximo de velocidad para determinada zona no significa que esté autorizado un conductor a ir a ese máximo todo el tiempo. Había lloviznado, según declaró el policía. Había una semicurva que impedía ver el carril izquierdo por donde transitaba la Sra. Guerra, más allá de 30 ó 40 pies. El sol de frente le nublaba la vista. Continuar la marcha a 25 millas por hora, bajo esas circunstancias, constituyó negligencia causante del accidente.

La Sec. 5-101 de la Ley de Vehículos y Tránsito, 9 L.P.R.A. sec. 841, dispone, en su inciso (a):

"La velocidad de un vehículo deberá regularse con el debido cuidado, teniendo en cuenta el ancho, tránsito, uso y condiciones de la vía pública. Nadie deberá guiar a una velocidad mayor de la que le permita ejercer el debido dominio del vehículo y reducir la velocidad o parar cuando sea necesario para evitar un accidente. De conformidad con los requisitos expresados anteriormente toda persona deberá conducir a una velocidad segura y adecuada al acercarse y cruzar una intersección o cruce ferroviario, al acercarse a la cima de una pendiente, al viajar por una carretera estrecha o sinuosa, o cuando existan peligros especiales con respecto a peatones u otro tránsito o por razón del tiempo o las condiciones de la vía pública."

La Sec. 5-1002, 9 L.P.R.A. sec. 1102, impone la siguiente obligación a todo conductor, en su párrafo (a), inciso (3):

"Tomar todas las precauciones para no arrollar a los peatones, debiendo tomar precauciones especiales cuando los peatones fueren niños, ancianos o personas incapacitadas. Estas precauciones serán tomadas aun cuando el peatón estuviere haciendo uso incorrecto o ilegal de la vía pública. El uso de la bocina por sí solo no relevará al conductor de responsabilidad criminal, si tal uso no estuviere acompañado por otras medidas de seguridad."

■ En *Briales Aldrich* v. *Torres*, 89 D.P.R. 815, 821 (1964), señalamos: "La vía franca o el derecho de paso no da licencia para arrollar, por ese solo hecho, a uno que la invada." Véanse, además, *Pueblo* v. *Ortiz Morales*, 86 D.P.R. 456, 465 (1962); y *Pueblo* v. *Pérez*, 79 D.P.R. 487, 493 (1956).

Consideradas todas las circunstancias, entendemos que la Sra. Guerra Mondragón incurrió en por lo menos un 75 por ciento a la ocurrencia del accidente y en esa proporción deben responder solidariamente los demandados recurridos.

*Se dejará sin efecto nuestra sentencia de 6 de marzo de 1978, se revocará la dictada por el tribunal a quo, y se dispondrá que éste determine, luego de descontar las deducciones autorizadas por la "Ley de Protección Social por Accidentes de Automóviles," la indemnización que deberá pagarse a cada demandante en cada caso.*

El Juez Presidente Señor Trías Monge no intervino. Los Jueces Asociados Señores Rigau, Dávila y Martín disintieron sin opinión.

