# United States Court of Appeals
## For the First Circuit

No. 05-1693

NILDA COLÓN-MILLÍN,

Plaintiff, Appellant,

v.

SEARS ROEBUCK DE PUERTO RICO, INC.; LUIS A. MATOS-COLÓN;
LIBERTY MUTUAL INSURANCE COMPANY,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Raymond Acosta, U.S. District Judge]

Before

Boudin, Chief Judge,
Stahl, Senior Circuit Judge,
and Lipez, Circuit Judge.

Edgardo Colón-Arrarás, with whom Victor J. Quiñones and
Goldman Antonetti & Córdova, P.S.C. were on brief, for the
appellants.
Francisco E. Colón-Ramírez, with whom Colón, Colón & Martínez,
P.S.C. was on brief, for the appellees.

July 19, 2006

**LIPEZ, <u>Circuit Judge</u>**. Nilda Colón-Millín ("Colón") filed a tort action against Sears Roebuck of Puerto Rico, Luis Matos-Colón ("Matos"), his wife and their conjugal partnership, and Liberty Mutual Insurance Company,[1] asserting that a Sears van, driven by Matos, struck her as she was walking across a street in San Juan, Puerto Rico. Her complaint, filed in federal district court on the basis of diversity jurisdiction, sought damages for pain and suffering, loss of income, and medical bills. After a two-day trial on the issue of liability, the jury returned a verdict for the defendants. Colón then filed a motion for a new trial, arguing that the defendants had ambushed her with allegedly perjured testimony challenging the identity of the police officer who investigated the accident. In support of her claim, Colón submitted the affidavit of a police officer who contradicted the defense witnesses' surprise testimony. Colón also argued that she should get a new trial because the district court erred in providing certain jury instructions and failed to give her an opportunity to state her objections to the jury instructions on the record.

The district court denied the plaintiff's motion, construing it as one based on "newly discovered evidence" and holding that she had not been sufficiently diligent in obtaining

---

[1] At trial, the district court granted Liberty Mutual Insurance Company judgment as a matter of law under Fed. R. Civ. P. 50. The plaintiff did not appeal this issue.

the police officer's affidavit or calling him as a witness during the trial. The court also rejected her arguments on the jury instructions.

We affirm on somewhat different grounds. Our review of the record reveals that the defendants did not comply with their obligation under Fed. R. Civ. P. 26(e)(2) to supplement their responses to the plaintiff's written interrogatories. This failure led to trial testimony that understandably surprised the plaintiff. Nevertheless, the plaintiff failed to respond to the surprise at trial in a manner that justifies a new trial. She did not object to the defense witnesses' testimony, and she did not request a continuance in order to respond or seek any other sanction for a discovery violation. Furthermore, the district court did not err in its jury instructions, and the plaintiff had the opportunity to state the grounds of her objections to the jury instructions on the record. We therefore conclude that the district court did not abuse its discretion in denying the plaintiff's motion for a new trial.

**I.**

We summarize the evidence presented by the witnesses at trial. We then describe the plaintiff's response to the surprise testimony at trial and the discussion of the issue during closing arguments. Finally, we discuss the plaintiff's actions following

the close of evidence, including her objections to the district court's jury instructions and her motion for a new trial.

## A. The plaintiff's case

In support of her case, Colón offered her testimony and that of two other witnesses: Officer José Ortiz-Lopez ("Officer Ortiz"), a police officer who arrived at the scene of the accident, and Percival Clouden, who had accompanied Colón to Puerto Rico.

### 1. Colón's testimony

Colón testified that she is a resident of St. Thomas, U.S. Virgin Islands, and was visiting Puerto Rico in February 1999. On the morning of February 25, 1999, she was struck by a Sears van as she crossed Ponce de León Avenue in San Juan. She had begun crossing the street while the van was at a complete stop, but then the van began to accelerate. The van struck her, flinging her onto the pavement. The driver, Matos, got out of the van, apologizing to Colón several times. Matos explained to Colón that he had been reading something for directions and then stepped on the accelerator; by the time he looked up and saw her, it was too late. Shortly after the accident, police arrived at the scene and an officer interviewed Colón. Clouden, who had accompanied Colón to Puerto Rico and was in the vicinity of the accident, then took her to the hospital.

## 2. Officer Ortiz's testimony

Officer Ortiz testified that he and another police officer, Omar Sein, got to the scene of the accident shortly after it happened. Officer Sein directed traffic. Officer Ortiz interviewed Colón, Matos, and Clouden. He asked them if they knew of any other witnesses, but they did not identify anyone else. According to Officer Ortiz, the descriptions of the accident by Colón and Matos were consistent. Matos explained to Officer Ortiz that he had been searching for something and did not notice the plaintiff crossing the street.

Several hours after the accident, Officer Ortiz prepared a police report in which he noted that Matos did not yield the right of way to Colón. According to Officer Ortiz, Matos went to the police station the day after the accident, but did not change his story or mention any other witnesses.

## 3. Clouden's testimony

Clouden testified that he had accompanied Colón to Puerto Rico and was with her the day of the accident. He was walking up the street to meet her when the accident occurred. He did not see whether the van hit her, but saw her cross the street and, moments later, saw her lying in the street approximately five feet from the van. He saw the driver of the van speak to Colón. Clouden helped Colón up and out of the street. He recalled seeing a police officer at the scene.

**B. The defendants' case**

The defendants presented the testimony of Matos; Luis Sierra-Rivera ("Sierra"), a witness to the accident; and Javier Rivera-Montañez ("Rivera"), a Sears Asset Protection Manager.

**1. Matos's testimony**

Matos testified that he had already started to drive forward when Colón ran out in front of his van, at which point he applied the brakes and stopped suddenly. Matos stated that the actual impact of the vehicle on Colón was minimal, but she was startled, lost her balance, and fell. Matos got out of the van and apologized, but never told Colón that he was looking for directions or was otherwise distracted just before the accident.

When Clouden came to help take Colón out of the street, Matos saw Sierra, a co-worker from Sears, who told Matos that he saw what happened and told him that he should contact Sears. Matos called Sears and spoke with Rivera, the Asset Protection Manager, who told Matos to wait for the police to arrive.

Officers Ortiz and Sein arrived at the scene. However, according to Matos, it was Officer Sein, not Officer Ortiz, who interviewed him. Matos informed Officer Sein that Sierra was a witness to the accident. Matos also testified that he met with Officer Sein, not Officer Ortiz, in the police station after the accident.

### 2. Rivera's testimony

Rivera testified that Matos contacted him about the accident. As an Asset Protection Manager for Sears, Rivera filled out an accident report for the company after interviewing Matos and Sierra, whom the report identified as a witness to the accident. Rivera also accompanied Matos to the police station on a date after the accident, where he confirmed that he and Matos met with Officer Sein.

### 3. Sierra's testimony

Sierra testified that he used to work for the Department of Agriculture, which is located near Ponce de León Avenue, in 1999. He worked there during the early morning hours and then worked part-time for Sears later in the day. On the morning of the accident, Sierra was walking by Ponce de León Avenue on his way to breakfast when he saw the Sears van. He observed the van stop to let some pedestrians cross in front of it. The van then started to move but stopped suddenly as a woman crossed quickly in its path. He said he saw her put her hands on top of the hood, lose her balance, and fall. He then saw Matos, whom he recognized as a Sears coworker, get out of the van and help the woman. Officer Sein arrived and spoke with Sierra. After telling Officer Sein what happened, Sierra left. Sierra was later interviewed by Rivera about the accident.

## C. Plaintiff's response to the testimony about the identity of the investigating police officer

Plaintiff's counsel did not object to the defense witnesses' testimony regarding Officer Sein. He did not ask the court for a continuance so that he could call Officer Sein as a rebuttal witness, nor did he seek any other sanction for a discovery violation. Instead, during his cross-examinations of Rivera and Sierra, plaintiff's counsel asked both witnesses whether the defendants had called Officer Sein as a witness for the defense, which they had not. Later, during his closing argument, plaintiff's counsel focused on the fact that the defendants did not call Officer Sein as a witness:[2]

> [R]egarding Mr. Matos, he mentioned that he only spoke to Officer Sein, the other policeman that was with Mr. Ortiz at the scene of the accident. The fact is that they knew about Officer Sein's existence since the date of the accident, since 1999. Yet Sears

---

[2] Under certain conditions, a party may argue that the jury should draw an adverse inference against the opposing party because of its failure to call a witness. See United States v. Ariza-Ibarra, 651 F.2d 2, 15-16 (1st Cir. 1981) ("[W]hen a party fails to call a witness whom that party would ordinarily produce if the facts known by the witness were favorable to that party, the jury may infer that the absent witness's testimony would have been adverse to that party. This adverse inference may not reasonably be drawn, however, unless the evidence shows that the witness is available to testify on behalf of the party, that the testimony of the witness would be relevant and noncumulative, and that the witness is not prejudiced against the nonproducing party." (internal citation omitted)). The parties did not raise any of these missing witness requirements with the court, nor did either party object to the opposing party's missing witness argument. They also do not raise any missing witness issues on appeal.

decided not to call him to testify. He did not come here to testify. . . .

Now, why was Mr. Sein not brought? Was Sears afraid that Officer Sein would not corroborate Mr. Matos's version? Were they afraid that Officer Sein would have said that he never spoke with Matos at the scene of the accident[?] Even more important, were they afraid that he could corroborate that Matos stated that he had no witnesses[?] The fact is that Officer Sein did not come to testify.[3]

At no time during the trial did plaintiff's counsel argue to the district court that the testimony of the defense witnesses regarding Officer Sein was unfairly surprising, that he needed a continuance to respond to the testimony, or that the testimony constituted evidence of fraud.

---

[3] In his closing argument, defense counsel responded to this portion of the plaintiff's closing argument:

What about Officer Sein, why didn't I call him. Well, first of all[,] why didn't plaintiff[] call him[?] I will tell you why I didn't call him, he didn't fill out the report unfortunately. Unfortunately the person who signed it was Agent Ortiz who apparently did nothing at the accident site. I wasn't afraid of what Sein had to say. First of all, we know . . . Mr. Sierra identified Officer Sein, Mr. Rivera identified Officer Sein for us . . . . .
So it is not [] why I didn't call him, it is why didn't they call him. They are the ones and the judge will instruct you, that they have the burden of proof. Why did they not call Officer Sein[?]

**D. Jury instructions, verdict, and motion for a new trial**

After the closing arguments, the court instructed the jury. The court then summoned counsel to the bench. Plaintiff's counsel briefly stated his objections to the jury instructions by referring to the number assigned to each jury instruction that he thought should or should not have been included. Plaintiff's counsel did not explain the grounds for these objections on the record. After approximately one half-hour of deliberations, the jury returned a verdict for the defendants. The court entered judgment for the defendants on September 24, 2001.

On October 4, 2001, Colón filed a motion for a new trial under Fed. R. Civ. P. 59(a). In her motion, she argued that the defendants ambushed her at trial with perjured testimony; that the court erred in not allowing her attorney to record the bases of her objections to jury instructions; and that the court improperly excluded some of her proposed jury instructions, improperly modified others, and erred in giving one of the defendants' proposed instructions. In support of her claim that the defendants had perjured themselves, she submitted an affidavit from Officer Sein. Officer Sein stated that, contrary to the testimony of the defense witnesses, he never interviewed any witnesses at the scene of the accident or met with Matos or any other Sears employee at the police station at any point after the accident. Officer Sein confirmed that Officer Ortiz interviewed these individuals.

-10-

According to the plaintiff, the purpose of the defense witnesses' contrary and perjurious testimony was to undermine Officer Ortiz's testimony that Matos had informed him that he had been distracted just prior to the accident, and to support the defendants' story that Sierra also witnessed the accident and could confirm Matos's testimony.

The district court construed Colón's motion as a motion for a new trial based on "newly discovered evidence." The court held that the plaintiff failed to meet her burden of showing that she was duly diligent in trying to discover the new evidence, i.e., Officer Sein's testimony. The court also rejected the plaintiff's arguments regarding the jury instructions, concluding that it had given the plaintiff an opportunity to state her objections for the record and that, in any case, the plaintiff's substantive objections to the instructions were meritless. On appeal, Colón assigns error to all of these rulings.

## II.

Under Fed. R. Civ. P. 59(a), "[a] verdict may be set aside and new trial ordered when the verdict is against the clear weight of the evidence, or is based upon evidence which is false, or will result in a clear miscarriage of justice." Ahern v. Scholz, 85 F.3d 774, 780 (1st Cir. 1996) (internal quotation marks and citations omitted). We review the court's denial of a motion for a new trial under Rule 59(a) for abuse of discretion. See

<u>Valentín-Almeyda</u> v. <u>Municipality of Aguadilla</u>, 447 F.3d 85, 103-104 (1st Cir. 2006).

## A.  Defense witnesses' allegedly perjured testimony

Officer Sein's affidavit stated that Officer Ortiz, not Officer Sein, interviewed the defense witnesses.  The affidavit directly contradicted the testimony of the defense witnesses.  Yet the district court rejected the plaintiff's argument that Officer Sein's affidavit required a new trial.  Specifically, the district court found that Colón had not been duly diligent in obtaining the evidence of perjury and that, in any event, there was ample evidence to support the verdict:

> There is no evidence that the affidavit could not have been obtained earlier had plaintiff been properly diligent.  The existence of this witness was known to the plaintiff for months; Officer Sein was even announced by defendant and later put at plaintiff's disposition at trial.  If plaintiff chose not to call Officer Sein as a rebuttal witness that was a choice she waived.  She cannot now be heard to claim that the alleged testimony of this witness, through an affidavit, is so new and so material that it would change the outcome of the trial, inasmuch as she did not attempt to bring his testimony forth during trial.  In any event, even if Officer Sein had testified at trial, his  testimony would have been cumulative to plaintiff's own testimony, or as impeachment to defendants' testimony.  Therefore, ultimately, this alleged new evidence would not have produced a different outcome at trial.  There was more than sufficient evidence to support the jury's verdict.  The Court finds that the jury's verdict was reasonable and that it was based on ample evidence brought forth during trial.

-12-

<u>Colón-Millín</u> v. <u>Sears</u>, No. 00-1213, slip op. at *3-4 (D.P.R. Mar. 11, 2005).

On appeal, Colón argues that the district court wrongly construed her motion for a new trial as one based on "newly discovered evidence" and thus improperly required a finding of due diligence to explain why the information had not been introduced at trial.[4] According to the plaintiff, "[t]he reason the affidavit was not obtained before the trial took place was not due to availability. It was not procured because Officer Sein's role at the scene of the accident, and after, was not in dispute on the eve of trial." In other words, the plaintiff argues that the defendants misled her to believe that the fact that Officer Ortiz interviewed the witnesses was uncontested. By doing so, the defendants concealed a key aspect of their defense theory -- that Officer Ortiz did not conduct the investigation at all. The purpose of this perjured testimony, according to the plaintiff, was

---

[4] Rule 59(a) does not explicitly discuss the standards for granting or denying a motion for a new trial based on newly discovered evidence. Instead, it permits the grant of a new trial "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a). We have applied specific rules governing when a court may grant a motion for a new trial based on newly discovered evidence. <u>See</u> <u>Acosta-Mestre</u> v. <u>Hilton Intern. of Puerto Rico, Inc.</u>, 156 F.3d 49, 56 (1st Cir. 1998) ("To warrant granting a new trial based on newly discovered evidence, the movant must demonstrate that (1) the evidence has been discovered since trial; (2) the evidence could not by due diligence have been discovered earlier; (3) the evidence is not merely cumulative or impeaching; and (4) the evidence is of such a nature that it would probably change the result if a new trial is granted.").

to "efface all evidentiary weight to Officer Ortiz's testimony and the police report, which were central to Appellant's case" and to "support[] the fabrication of a 'witness' [Sierra] who happened to be at the sidewalk that day, a Sears employee nonetheless."

There is some merit to the plaintiff's contention that the district court wrongly construed her motion as one based on "newly discovered evidence," and thus improperly required a showing of due diligence to explain why the evidence was not "discovered" prior to trial. Given the nature of the plaintiff's arguments, her motion is best construed as a request for a new trial on the basis of fraudulent and unexpected testimony. Thus, we must determine whether, under the standards applicable to a motion made on that basis, the district court abused its discretion in denying the plaintiff's motion for a new trial.

### 1. Fraud

We cannot conclude that Officer Sein's affidavit constitutes evidence of fraud sufficient to merit a new trial. The burden on the moving party to prove fraud is high:

> [The moving party] must clear a high hurdle in order to set aside the verdict based on their allegations of fraud. The moving party must demonstrate fraud by clear and convincing evidence and must show that the fraud foreclosed full and fair preparation or presentation of its case. We have explained that fraud on the court occurs[] where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially

-14-

> to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense.

Perez-Perez v. Popular Leasing Rental, Inc., 993 F.2d 281, 285 (1st Cir. 1993) (quoting Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir. 1989)).  Officer Sein's affidavit merely confirms parts of Officer Ortiz's testimony and does not, in and of itself, establish that the defendants knowingly provided false testimony or sentiently crafted a scheme to hamper the plaintiff's presentation of her case.  Thus, even if the district court had treated the motion for a new trial as one based on fraud rather than newly discovered evidence, the motion could not have been granted on that basis.

### 2.  Unfairly surprising testimony

In arguing for a new trial on the basis of unfairly surprising testimony, we take it that the plaintiff is arguing that a new trial is necessary to avoid a clear miscarriage of justice. This claim, in turn, rests on the contention that the defendants violated a discovery rule of the Federal Rules of Civil Procedure when they ambushed her with the testimony about Officer Sein.  We find this argument more persuasive.

Under Fed. R. Civ. P. 26(e), a party must "supplement its answers to interrogatories if the party learns that the response is in some material respect incomplete or incorrect and the other party is unaware of the new or corrective information. . . .  This

-15-

supplementation requirement increases the quality and fairness of the trial by narrowing the issues and eliminating surprise." Licciardi v. TIG Ins. Group, 140 F.3d 357, 363 (1st Cir. 1998) (internal quotation marks and citations omitted).[5] The plaintiff argues that she was ambushed at trial because the defendants failed to supplement their answers to the interrogatories with information about Officer Sein's role in the investigation, even after it was clear that the plaintiff's theory of the case was based on Officer Ortiz's investigation.

The record supports the plaintiff's argument. In her written interrogatories, the plaintiff asked the defendants to "[i]dentify each and any person(s) that has(have) or that you believe may have any knowledge of the facts relevant to the complaint, to the answer thereto and/or to any affirmative

---

[5] Fed. R. Civ. P. 26(e) states in relevant part:

> A party who has made a disclosure under subdivision (a) or responded to a request for discovery with a disclosure or response is under a duty to supplement or correct the disclosure or response to include information thereafter acquired if ordered by the court or in the following circumstances:
> . . .
> A party is under a duty seasonably to amend a prior response to an interrogatory, request for production, or request for admission if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

defenses. For each such person state the known and/or suspected scope of said knowledge." In response, the defendants listed "Plaintiff, Sears, Javier A. Rivera, Luis Matos Colón, Luis Sierra, and presumably the policemen and medical technicians whose [sic] arrived at the scene." The defendants did not state the scope of each witnesses' knowledge, although they did briefly describe, in response to other interrogatories, the scope of the testimony to be provided by Rivera, Matos, and Sierra, and attached a statement by Matos describing his version of the accident. None of these materials mentioned the defendants' contention that Officer Ortiz never interviewed these witnesses.

In their brief, the defendants justify this omission by stating that "when Sears answered the interrogatories, it did not know at that point that there was a controversy as to who interviewed Mr. Matos and Mr. Sierra." However, even if the defendants' omission in their initial response to the interrogatories is justifiable, they provide no explanation for why they failed to supplement their interrogatories after they became aware that this issue was in controversy -- either after they deposed Officer Ortiz, or after the parties submitted their joint Proposed Pre-Trial Order to the district court.

Upon deposing Officer Ortiz, the defendants learned that he planned to testify that he interviewed Matos and that Matos never mentioned Sierra as a witness. Furthermore, the plaintiff's

-17-

statement of the "Nature of the Case" in the joint Proposed Pre-Trial Order clearly indicated to the defendants that Officer Ortiz's testimony played a key role in the plaintiff's theory of the case:

> Agent Ortiz investigated the facts surrounding the accident, while his fellow officer took care of directing the traffic and dealing with the on-lookers. . . . Agent Ortiz interviewed Mr. Luis Matos Colón, who told him that the reason for the accident was that he had not been paying attention. Agent Ortiz will also testify that Mr. Luis Matos, the driver of the Sears van[,] never informed him about the existence of any eye witnesses to the accident.

Yet, in their version of the "Nature of the Case" in the joint Proposed Pre-Trial Order, the defendants omitted any reference to the contrary testimony that their witnesses were going to provide regarding Officer Sein's role in the investigation. Morever, in their list of contested facts in the joint Proposed Pre-Trial Order, the defendants did not note that they contested the identity of the investigating officer. Instead, the only contested fact regarding Officer Ortiz that they noted was "[w]hether Agent Jose Ortiz Lopez adequately investigated the accident." This statement is misleading, written in a way that presupposes that Officer Ortiz conducted the investigation.

After deposing Officer Ortiz and receiving the plaintiff's portion of the joint Proposed Pre-trial Order, the defendants had to be aware that their prior response to the

-18-

interrogatories was "in some material respect incomplete or incorrect."  Fed. R. Civ. P. 26(e)(2).  On the basis of the defendants' response to the interrogatories and their statement of contested facts, the plaintiff had no reason to expect that the defendants would question the identity of the police officer who conducted the accident investigation.  Yet the defendants did not supplement their interrogatories.  This was a clear violation of Rule 26(e).  See Licciardi, 140 F.3d at 364  (finding a Rule 26(e) violation where, due to defendant's failure to supplement his interrogatories, "plaintiff was prejudiced by presenting a case addressed to one key issue, only to have defendant put on a case addressed to a different predicate key issue"); see also Macaulay v. Anas, 321 F.3d 45, 52 (1st Cir. 2003) ("Common sense suggests that when a party makes a last-minute change that adds a new theory of liability, the opposing side is likely to suffer undue prejudice.").

**3.  Whether the defendants' discovery violation merits a new trial**

We do not minimize the significance of the defendants' discovery violation.  Yet the failure of the defendants to supplement their responses to the interrogatories or otherwise inform the plaintiff in a timely manner of the information about Officers Ortiz and Sein does not excuse the plaintiff from her failure to bring this discovery violation to the attention of the district court at trial.  In response to a valid Rule 26(e)

-19-

objection, a court "may impose sanctions on one who defies the rule, including exclusion of evidence, granting a continuance, or other appropriate action."  See Licciardi, 140 F.3d at 363. Instead of making a timely objection under Rule 26(e) during the trial, the plaintiff chose to cross-examine the defense witnesses about the absence of Officer Sein and asked the jury to draw an adverse inference against the defendants because of his absence. If the plaintiff had raised a timely Rule 26(e) objection, the district court might have granted her a continuance to produce Officer Sein's testimony or could have excluded the testimony regarding the identity of the investigating officer.

Colón argues that a request for a continuance to find Officer Sein was not a practical option during the short, 2-day trial.  To support this point, she cites Klonoski v. Mahlab, 156 F.3d 255 (1st Cir. 1998).  In Klonoski, we recognized that a continuance is not always a feasible response to a party's discovery violation.  Id. at 273-74.  Where the damage from the surprise testimony cannot be undone or where the continuance would undoubtedly be too lengthy, other sanctions are more appropriate. Id.  In this case, we have little basis for evaluating the practicality of a continuance because plaintiff's counsel never raised the possibility with the court.  What we do know suggests that a brief continuance may well have been feasible.  The district court suggested in its explanation of the denial of the plaintiff's

motion for a new trial that Officer Sein "was even announced by defendant and later put at plaintiff's disposition at trial." The trial was conducted in San Juan. Officer Sein was apparently an officer in San Juan. Plaintiff's counsel did not identify Officer Sein as a rebuttal witness. Yet plaintiff's counsel's cross-examination of the defense witnesses and his closing argument to the jury revealed that he immediately understood the importance of the testimony of defendants about the respective role of Officers Ortiz and Sein in the investigation.

Moreover, nothing prevented plaintiff's counsel from arguing that the defendants had violated Rule 26(e) by failing to supplement their response to the interrogatories. Plaintiff's counsel had at hand (or at least in the case file) all of the information he needed to document that violation. If he had acted in a timely fashion, he might well have been able to ask not only for a continuance but also for a sanction that might have precluded the defendants from relying on testimony crucial to their case about the respective roles of Officers Ortiz and Sein. The court was never given the opportunity to consider a sanction within the framework of the trial that would have been a proportionate response to the discovery violation.

"It is well settled that Rule 59 provides a means of relief in cases in which a party has been unfairly made the victim of surprise. The surprise, however, must be inconsistent with

-21-

substantial justice in order to justify a grant of a new trial." Perez-Perez, 993 F.2d at 287 (internal quotation marks and citation omitted).  In the absence of any objection to the admission of the defense witnesses' surprise testimony or any request for a continuance or other sanction because of a discovery violation, we cannot conclude that its admission was "inconsistent with substantial justice."  Id.; see also Poulin v. Greer, 18 F.3d 979, 985 (1st Cir. 1994) ("[P]laintiffs never requested a recess prior to [the] testimony in order to counter its alleged force. Courts have looked with disfavor upon parties who claim surprise and prejudice but who do not ask for a recess so that they may attempt to counter the opponent['s] testimony." (internal quotation marks and citations omitted)).  Thus, the discovery violation by the defendants did not justify a new trial for the plaintiff.

## B.  Jury instructions

The plaintiff also argues that she should get a new trial because the district court improperly excluded her proposed jury instructions Nos. 14 and 16; improperly modified jury instructions Nos. 13 and 15; and erred in giving instruction No. 29.[6]  Our standard of review here depends on whether the plaintiff preserved these arguments by objecting properly before the district court.

---

[6] To enhance an understanding of the jury instruction arguments, we include as an appendix to this opinion the portion of the court's instructions dealing with the respective rights and responsibilities of drivers and pedestrians under the law of Puerto Rico.

Fed. R. Civ. P. 51, as in effect at the time of trial in this case,[7] states in relevant part:

> No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury.

Fed. R. Civ. P. 51 (2001).

In this case, plaintiff's counsel did not state the grounds for the plaintiff's objections. Instead, plaintiff's counsel listed the objections by reference to the number designated to either the instruction the court gave or the instruction the plaintiff had requested. "Reading a list of the numbers of the requested instructions is not sufficient to preserve an objection under Rule 51." CVD, Inc. v. Raytheon Co., 769 F.2d 842, 859 (1st Cir. 1985).

The plaintiff attempts to circumvent the requirements of Rule 51 by arguing that the district court failed to give her a full opportunity to state her objections on the record. However, there is nothing in the record to support this claim. To the

---

[7] Fed. R. Civ. P. 51 was amended in 2003, effective Dec. 1, 2003. The 2003 amendments were designed in part to ease the burden on parties in preserving their objections to instructions where the district court had already made a definitive ruling, on the record, rejecting a request for a particular instruction. See Fed. R. Civ. P. 51(d), Advisory Comm. Notes, 2003 Amendments (2006). The amended rule also formally recognizes the general principle found in case law that a court may review unpreserved objections to jury instructions for plain error. See id.

contrary, the record reveals that, earlier in the trial, the district court suggested that the parties discuss their objections to the jury instructions for the record, but plaintiff's counsel asked to delay the discussion until some point after the defendants finished presenting their last witness. After the defense rested and closing arguments were presented, the district court read the instructions to the jury and then asked the attorneys to approach the bench. At that point, plaintiff's counsel brought up the issue of preserving objections. The court then stated, "I tell you what, this is what we are going to do[.] Are we on the record?" Plaintiff's counsel responded by stating, "I have it by numbers if you want," and then proceeded to note, by number, the plaintiff's objection to one of the court's instructions, and the plaintiff's list of proposed instructions that should have been included. The court then stated, "I am saying for the record the jury instructions that you mentioned are duly noted and have been discussed in chambers. Okay." Plaintiff's counsel replied by stating, in reference to the first objection, "Very well and the one that the Court gave that I approached is also noted?" The court replied, "Yes." And plaintiff's counsel said, "That was my question. Thank you, Your Honor."

Plaintiff's counsel gave no indication that he felt his client's rights were being restricted. To the extent that the plaintiff is now arguing that she should be excused from stating

the grounds for her objections because she was led to believe that a previous discussion with the court in chambers about plaintiff's objections would suffice to preserve them, this argument is incorrect. "A trial court's statement after the charge that objections made prior to it will be saved does not absolve an attorney from following the strictures of the rule." McGrath v. Spirito, 733 F.2d 967, 969 (1st Cir. 1984); see also Kerr-Selgas v. American Airlines, 69 F.3d 1205, 1213 (1st Cir. 1995). Rule 51 creates a strict rule for the parties, and "[t]here is no reason here to overlook appellant's failure to follow the rule." McGrath, 733 F.2d at 969.

We thus review the alleged errors for plain error. Torres-Rivera v. O'Neill-Cancel, 406 F.3d 43, 50 (1st Cir. 2005). "To obtain relief under this standard, the party claiming error must show (1) an error, (2) that is plain (i.e., obvious and clear under current law) (3) that is likely to alter the outcome, and (4) that is sufficiently fundamental to threaten the fairness or integrity or public reputation of the judicial process." Id. (internal quotation marks and citation omitted). The requirement that the error is likely to alter the outcome is particularly important in this context because "[a]n erroneous jury instruction necessitates a new trial only if the error could have affected the result of the jury's deliberations." Allen v. Chance Mfg. Co., 873 F.2d 465, 469 (1st Cir. 1989). After reviewing the arguments

-25-

raised by the plaintiff on appeal, we find no error, plain or otherwise.

### 1. Modifying plaintiff's proposed instruction No. 13

The district court did not err in modifying the plaintiff's proposed instruction No. 13. The plaintiff sought an instruction on pedestrians' rights of way on public roads. Some of the plaintiff's proposed language was included in the district court's instructions to the jury, but a paragraph about the duties of pedestrians and drivers under Puerto Rico law was eliminated. This paragraph stated:

> In Puerto Rico the law allows pedestrians to cross streets away from intersections and traffic lights. It requires that pedestrians exercise due care. Every driver of a motor vehicle in a public road is required by law to yield the right of way, slow down and stop the vehicle when necessary.

The district court explained that the "plaintiff's version of the cited law . . . omitted referring to the duty of the pedestrians who cross outside of crosswalks to 'yield the right of way to all vehicles . . .' Therefore, because the proposed language was radically different and conveniently omitted referring to the pedestrians' duty to yield, the [district court] eliminated it from proposed instruction No. 13." Colón-Millín, No. 00-1213, slip op. at 5.

We find no error here. The Puerto Rico Vehicle and Traffic law explains that a pedestrian who crosses outside of a

-26-

crosswalk "shall yield the right of way to all vehicles travelling upon said highway." 9 L.P.R.A. § 1101(a). The plaintiff's proposed instruction was incomplete and potentially misleading. Instead, the court stated the actual text of section 1101(a) as part of its jury instructions.

### 2. Excluding the plaintiff's proposed instruction No. 14

The plaintiff argues that the district court erred in excluding her proposed instruction No. 14, which stated: "In Puerto Rico, a driver of a motor vehicle that becomes aware of persons in the roadway has the duty of driving his vehicle with extraordinary care." The plaintiff cited Damiani Franco v. Donatiu Maldonado, 95 P.R.R. 809 (1968) as the basis for the proposed instruction. As the district court noted, however, Damiani Franco is not on point. Damiani Franco dealt with the duty of a driver to drive his vehicle "with more care than ordinary" when crossing an intersection because of a large gathering of people who were present during a visit from President Kennedy. Id. at 815. The driver in Damiani Franco was determined to have been traveling at an excessive speed. Id. Thus, the factual circumstances of that case differ from the situation here. While the accident between Matos and Colón occurred on a busy street, the particularly large crowd of individuals present in the Damiani Franco case was not a factor here. Nor was Matos's speed the underlying concern here. We

therefore find no error in the district court's omission of this proposed instruction.

### 3. Modifying the plaintiff's proposed instruction No. 15

The plaintiff argues that the district court erred in modifying her proposed instruction No. 15, which stated:

> In Puerto Rico, a pedestrian cannot be injured without any liability whatsoever on the part of the owner and/or driver of a motor vehicle for the sole fact that he is standing in the roadway of a street and not on the sidewalk or because she is invading the path of a vehicle. In that case there is no right of way for the motor vehicle.

As the basis for her proposed instruction, the plaintiff cited Briales Aldrich v. Torres, 89 P.R.R. 797 (1964) and Vda. De Vila v. Guerra Mondragón, 107 D.P.R. 418 (1978). The district court concluded that "the dicta plaintiff was citing for this proposed instruction . . . was so convoluted that it could have been misconstrued by the jury imposing strict liability in situations where a driver strikes a pedestrian." Colón-Millín, No. 00-1213, slip op. at 6-7 (internal citation omitted). Instead of adopting the plaintiff's proposed language, the district court modified the instruction to match more closely the statement in Vda. de Vila and Briales Aldrich. The modified instruction stated: "The mere fact that the pedestrian is invading the roadway does not give the driver a right to injure the pedestrian." See Vda. de Vila, 107 D.P.R. at 469 ("'The right-of-way does not grant the right on that fact alone, to run over a person who invades it.'" (quoting Briales

-28-

<u>Aldrich</u>, 89 P.R.R. at 803)).  In addition, the district court included other statements in the instructions, including "Drivers must take all precautions not to run over pedestrians," and "Those precautions must be taken even though the pedestrian is incorrectly or unlawfully using the highway."  In light of the confusing language proposed by the plaintiff and the district court's close adherence to the text of the underlying cases, we find no error in the court's modification.

### 4.  Excluding the plaintiff's proposed instruction No. 16

The plaintiff argues that the district court erred by excluding the plaintiff's proposed instruction No. 16, which read:

> Even in situations in which the driver of a motor vehicle has the right of way, said driver has the duty to exercise a high degree of care, having his vehicle under full control and must look to all sides with the purpose of preventing an accident.  If there is a person in the roadway, then there is no right of way for the driver.

The plaintiff identified three cases as the basis for this proposed instruction -- <u>Damiani Franco</u>, <u>Briales Aldrich</u>, and <u>Flores</u> v. <u>F. & J.M. Carreras, Inc.</u>, 83 P.R.R. 320 (1961).  The district court concluded "[i]nasmuch as plaintiff's proposed instruction No. 16 was based on her erroneous reliance on both the <u>Briales</u> and <u>Damiani</u> cases, which are inapplicable to the case at hand, the Court properly rejected this proposed instruction."  <u>Colón-Millín</u>, No. 00-1213, slip op. at 7.  We agree that <u>Damiani</u> involves different facts and thus does not support the text of the plaintiff's

-29-

proposed instruction.  While the court did not address the Flores case, that case is similarly inapplicable, involving a collision between vehicles at an intersection, not a collision of a vehicle and pedestrian outside a crosswalk.  The facts in Briales Aldrich come closer to the facts of the case here, and the language proposed by the plaintiff mirrors some of the dicta in that case, but we cannot say that the district court erred in rejecting the instruction.  As the district court previously noted, the proposed language, when taken outside of the factual context of the Briales Aldrich decision,[8] comes close to suggesting a strict liability standard for drivers who hit pedestrians.  This standard is unsupported in the case law.  The district court did not err in finding that the proposed instruction in this case was not supported by Briales Aldrich.  The district court nonetheless reiterated in other parts of the instructions that drivers must

_____

[8] The plaintiff in Briales Aldrich, a pedestrian, was attempting to cross a street when he stopped a few steps into the street, waiting for the vehicles to permit him to cross.  89 P.R.R. at 802.  While the plaintiff was standing in the street, a driver suddenly swerved his car in an attempt to overtake a truck that was entering another street in front of him.  Id.  At that point, the driver hit the plaintiff.  Id.  The court noted that the defendants presented no evidence at trial, and the witness testimony established that "the accident would not have occurred if said driver had not swerved suddenly to the left but stayed in his direction waiting for the truck to enter into the other street."  Id. at 802-03.  The court also noted that "[t]here is nothing in our record in the sense that plaintiff herein darted to cross in front of a vehicle."  Id. at 803.  On these facts, the court reversed a judgment dismissing the plaintiff's complaint.  Id. at 805.

-30-

take precautions to avoid hitting pedestrians even when the pedestrians are using the road improperly or unlawfully.

### 5. Including instruction No. 29

The plaintiff argues that the district court erred in including instruction No. 29, proposed by the defendants, which stated:

> The driver of a vehicle has the right to assume that a pedestrian standing in a safe place will not suddenly leave that place and place herself in the vehicle's path. To the contrary, the driver has the right to assume the pedestrian will not act in such a manner.

The defendants cited Meléndez v. Alvarez, 35 P.R.R. 316 (1926) and Abréu v. Díaz, 52 P.R.R. 715 (1938) as the basis for this instruction. The instruction matches almost exactly the text of these cases. See Abréu, 52 P.R.R. at 719 ("'[T]he driver of a motor vehicle has the right to presume that a person standing in a place of safety will not suddenly leave that position and place himself in front of the vehicle. On the contrary, he has the right to assume that he will not so act.'" (quoting Meléndez, 35 P.R.R. at 320). However, the plaintiff argues that the instruction "was couched in general terms, as if applicable to this case regardless of the parties' theories or particular findings of fact," apparently contesting the implication that the case here involved a situation where the pedestrian had placed herself in the vehicle's path. However, as the district court concluded, "[g]iven the testimony presented at trial that supported defendants' theory

that plaintiff had jumped out in front of the van, defendants were entitled to have this instruction given to the jury." Colón-Millín, No. 00-1213, slip op. at 7. We find no error here.

### III.

After carefully reviewing the record, we conclude that the defendants failed to supplement their responses to the interrogatories as required by Fed. R. Civ. P. 26(e)(2), leading to testimony that unfairly surprised the plaintiff at trial. However, because the plaintiff failed to object to the surprise testimony, request a continuance, or seek any other sanction for the discovery violation, that violation does not justify a new trial. Furthermore, we conclude that the plaintiff failed to preserve her objections to the jury instructions, despite having an opportunity to do so. Also, there was no error in the instructions, plain or otherwise. The court did not abuse its discretion in denying the plaintiff's motion for a new trial. The decision of the district court is affirmed. The parties shall bear their own costs on appeal.

So ordered.

**APPENDIX**

We set forth here a portion of the district court's jury instructions on the rights and responsibilities of drivers and pedestrians under Puerto Rico law, given to the jury in the United States District Court for the District of Puerto Rico on September 21, 2001 (Docket No. 00-1213):

> In Puerto Rico the owner of the motor vehicle is liable for the damages and losses caused through the guilt or negligence by operation of such vehicle with the authorization of the owner.
>
> The right of way is a right that a vehicle or pedestrian has to legally go on and with preference over another vehicle or pedestrian approaching thereat when the circumstances of speed, direction and proximity are such that an accident could be precipitated unless one of them yields the way to the other.
>
> Where there are consecutive intersections any of which are controlled by a traffic light, a pedestrian shall cross only on a pedestrian cross walk marked on the pavement. Where a pedestrian crosses a road outside of an intersection or cross walk he or she shall yield the right of way to all vehicles travelling on the road. Drivers must take all precautions not to run over pedestrians and to take special precautions when the pedestrians are children, old or disabled persons. These precautions must be taken even though the pedestrian is incorrectly or unlawfully using the public highway. The mere fact that a pedestrian is invading the roadway does not give the driver the right to injure the pedestrian. As a general rule a driver has a duty to maintain a sufficiently moderate speed and have the control necessary to stop his vehicle within the distance in which he can clearly see an obstruction or danger that is

before him.  However, this rule does not apply to a case in which there suddenly appears before the vehicle a dangerous situation that the driver had no reason to anticipate.

The driver of a vehicle has the right to assume that a pedestrian standing in a safe place will not suddenly leave that place and place herself in the vehicles path.  To the contrary, the driver has the right to assume a pedestrian will not act in such manner.